# MEDICAL PROFESSIONAL LIABILITY POLICY
## OCCURRENCE COVERAGE



## COVER PAGE

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary, we** agree to provide the insurance contained in the **policy.**

**THE COMPANY:**   The Medical Assurance Company, Inc.

**AGENT'S NAME AND ADDRESS:**
MacLennan & Bain Insurance
214 Aberdeen Drive
Valparaiso, IN  46385

**POLICYHOLDER:**   Mark S. Weinberger, M.D., P.C.
333 W. 89th Avenue, Suite W-1
Merrillville, IN  46410

**POLICY NUMBER:**   MP32800

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
|---|---|
| Coverage Summary | MAI-MP-020 09 99.OCC |
| Medical Professional Liability Policy | MAI-MP-030 09 99.OCC |
| Professional Legal Defense Coverage Part - Extended Form | MAI-MP-071 09 99.OCC |
| Renewal Endorsement | MAI-MP-500 09 99 |
| Indiana State Law Endorsement | MAI-MP-606 09 99.IN |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

ROBERT D. FRANCIS
Secretary

A. DERRILL CROWE, M.D.
President

COPY

# MEDICAL PROFESSIONAL LIABILITY POLICY
## COVERAGE SUMMARY

1. Policyholder's Name and Address:

   Mark S. Weinberger, M.D., P.C.
   333 W. 89th Avenue, Suite W-1
   Merrillville, IN  46410

2. Policy Number:  MP32800

3. Policy Period:  From 6/1/2001 to 6/1/2002 12:01 a.m. Standard Time at the address of the **policyholder** as stated above.

4. Total Premium: $10,317.00 (Does not include Indiana PCF surcharge in the amount of $8,214.00)

5. Schedule of Insureds (Primary Coverage)
   The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Each Medical Incident | Annual Aggregate | Deductible | Premium |
|---|---|---|---|---|
| INSURED ORGANIZATIONS Mark S. Weinberger, M.D., P.C. | $250,000 | $750,000 | N/A | $100 |
| INSURED PHYSICIANS Mark S Weinberger, M.D. | $250,000 | $750,000 | N/A | $10,217 |

6. Professional Legal Defense Coverage Premium:  $500.00 included above.

   Limits of Liability NOTE: These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage section or other parts of the policy.

| | Each Medical Incident |
|---|---|
| Retro Active Date: 9/23/1996 | |
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $25,000 |

By: _____
Authorized Representative



· Medical
Assurance

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| Policy No.:   MP32800 UE621793 | | X Occurrence |
| --- | --- | --- |
| | | Claims Made |
| | | Retro Active Date |
| Health Care Provider:   Mark S. Weinberger, M.D., P.C. | | X including employees |
| | | excluding employees |
| Medical License No.:   01045912 | | |
| Address (Street, City, State, Zip):   333 W. 89th Avenue, Suite W-1  Merrillville, IN 46410 | County:   Lake | |
| Coverage Dates | Classification Number:   80999 | |
| From:   6/1/2001   To   6/1/2002 | | |
| Limits of Liability | Surcharge Amount Paid:   $ 100 | |
| $250,000   per incident   $750,000   annual aggregate | | |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of  $ 100 for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2001, at the Home Office of Medical Assurance of Indiana.

Signed by: _Lois J. Wyrick_
(Authorized Representative)

MAI-UF-200 07 99

© 1999 Medical Assurance, Inc.



**·Medical Assurance**

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| | |
|---|---|
| Policy No.:     MP32800 DF624658 | X Occurrence<br><br>☐ Claims Made<br><br>Retro Active Date |
| Health Care Provider:     Mark S Weinberger, M.D.<br><br>Medical License No.:     01045912 | X Including employees<br>☐ excluding employees |
| Address (Street, City, State, Zip):     333 W. 89th Avenue, Suite W-1<br>Merrillville, IN 46410 | County:     Lake |
| Coverage Dates<br><br>From:     6/1/2001     To     6/1/2002 | Classification Number:     80155 |
| Limits of Liability<br><br>$250,000     per incident     $750,000     annual aggregate | Surcharge Amount Paid:     $8,114 |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of  $ 8,114 for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2001, at the Home Office of Medical Assurance of Indiana.

Signed by: _____*Lois J. Wyrick*_____
(Authorized Representative)

MAI-UF-200 07 99                    © 1999 Medical Assurance, Inc.

# MEDICAL ASSURANCE OF INDIANA
# SCHEDULE OF PREMIUMS AND INDIANA PCF SURCHARGE

*(This schedule is provided for the convenience of the client and is not a part of the policy contract)*

Policyholder's Name and Address:    Mark S. Weinberger, M.D., P.C.    **AGENT'S NAME & ADDRESS:**
                               333 W. 89th Avenue, Suite W-1    MacLennan & Bain Insurance
                               Merrillville, IN 46410           214 Aberdeen Drive
                                                                Valparaiso, IN 46385

Policy Number: MP32800

Policy Period:  From    6/1/2001              to       6/1/2002

Schedule of Insureds:

| Name | PCF ISO Code | Specialty Description | Coverage Premium | Indiana PCF Surcharge | Insured Total |
|---|---|---|---|---|---|
| **INSURED ORGANIZATIONS** | | | | | |
| Mark S. Weinberger, M.D., P.C. | 80999 | Medical Organization | $100.00 | $100.00 | $200.00 |
| **INSURED PHYSICIANS** | | | | | |
| Mark S Weinberger, M.D. | 80155 | Plastic-Otorhinolaryngology-mjrSurgery | $10,217.00 | $8,114.00 | $18,331.00 |
| | | Total: | $10,317.00 | $8,214.00 | $18,531.00 |

# MEDICAL PROFESSIONAL LIABILITY POLICY

## DEFINITIONS

As used in the **policy**, the following terms shall have the following meanings:

**Cover Page** means the Medical Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Medical Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable because of injury, including death.

**Insured** means any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Medical incident** means:

A.  a single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**; or

B.  a single act or omission or a series of related acts or omissions by an **insured physician** during the performance of **peer review services** which results, or is likely to result, in **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **medical incident**, and a continuing course of **professional services** relating to substantially the same medical condition constitutes a single **medical incident**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person licensed to practice as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist or emergency medical technician.

**Peer review services** means service by an **insured physician** while acting within the scope of his duties as a member of:

A.  a utilization and quality control peer review organization acting under contract with the U.S. Department of Health and Human Services to review the professional activities of health care providers;

B.  a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical staff;

C.  a duly constituted hospital or surgery center staff committee, consisting solely of members of the medical staff of such hospital or surgery center, for the evaluation and improvement of quality of care;

D.  a duly constituted hospital peer review committee, consisting solely of members of the medical staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

E.  any peer review program conducted by **us**.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **medical incident** occurs shall apply to that **medical incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional services** means the provision of medical services, including medical treatment, making medical diagnoses and rendering medical opinions or medical advice.

**We, our** and **us** refer to the company issuing the **policy**, which is designated as "THE COMPANY" on the **Cover Page**.

# GENERAL CONDITIONS

### I.    PREMIUM

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

### II.    RIGHTS AND DUTIES OF POLICYHOLDER

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under the **policy**. However, the **policyholder** shall pay all premiums and receive all notices and invoices under the **policy**, and all provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

### III.    INSPECTION

**We** shall be permitted but not obligated to inspect any **insured's** property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

### IV.    INSUREDS' DUTIES IN THE EVENT OF INCIDENT, CLAIM OR SUIT

A.    When an **insured** becomes aware of any claim or suit to which this insurance applies, or any incident which is likely to result in such a claim or suit, such **insured** or his representative must report such incident, claim or suit to **us** as soon as practicable.

B.    Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under the **policy**, and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured's** legal counsel.

C.    If claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by him or his representative.

D.    No **insured** shall alter patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

If any **insured** fails to comply with his obligations under the **policy**, **our** obligations to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

### V.    CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, nor until the amount of any **insured's** obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under the **policy** to the extent of the insurance afforded by the **policy**. No person or organization shall have any right under the **policy** to join **us** as a party to any action against an **insured** to determine the **insured's** liability, nor shall **we** be impleaded by an **insured** or his legal representative. Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder. Any claim against **us** shall be settled by arbitration as provided in Section XIII below.

### VI.    OTHER INSURANCE

A.    With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by the **policy** is excess over any valid and collectible insurance available to any **insured**.

B.    Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any other collectible insurance available to such **insured**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C. Except as provided in A or B, and any endorsement forming a part of the **policy**, this insurance is primary.

D. When both this insurance and other insurance apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under the **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1. If all of such other valid and collectible insurance provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2. If any such other insurance does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under the **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

## VII. SUBROGATION

In the event of any payment under the **policy**, **we** shall be subrogated to any **Insured**'s rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

## VIII. ASSIGNMENT

No **insured** may assign his interest in the **policy**. If, however, any **insured** shall die, such insurance as afforded by the **policy** shall apply to such **insured**'s legal representative, as an **insured**, but only while acting within the scope of his duties as such.

## IX. CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of the **policy** or estop **us** from asserting any right under the terms of the **policy**; nor shall the terms of the **policy** be waived or changed, except by endorsement issued to form a part of the **policy**.

## X. CANCELLATION

The **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. The **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective. If the **policy**, or coverage of any **insured** thereunder, is canceled by **us** for failure of the **policyholder** to pay premiums, or when the **policy**, or coverage of any **insured** thereunder, has been in effect for less than 60 days, such notice of cancellation shall be given at least ten days prior to the date of cancellation. Otherwise, such notice of cancellation shall be given at least 45 days prior to the date of cancellation. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI. RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew the **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew the **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given at least 45 days prior to the end of the **policy period**.

## XII. FRAUD AND MISREPRESENTATIONS

By acceptance of the **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that the **policy** is issued in reliance upon the truth of such representations, and that the **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in his application or renewal application for insurance, the **policy** is void as to the party committing such fraud, material misrepresentation or omission, and no coverage is afforded to such party hereby.

**XIII.  ARBITRATION**

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with the **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under the **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under the **policy**.

**XIV.  GOVERNING LAW**

The **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under the **policy** to arbitration, as provided in Section XIII above.

# PROFESSIONAL LIABILITY COVERAGE PART

**I.    INSURING AGREEMENT**

**We** agree to pay on behalf of each **insured** all sums which such **insured** shall become legally obligated to pay as **damages** because of any **medical incident** which occurs during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **medical incidents** which occur while such persons are employed by an **insured organization or insured physician** and acting within the scope of such employment and while engaged in the  performance of **professional services** which such persons hold any required license to perform. This insurance applies only to **medical incidents** arising out of **professional services** or **peer review services** rendered, or which should have been rendered, within the United States of America.

**II.   INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **medical incident** that we deem expedient.  **We** have the right and duty to defend any **suit** against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**.  **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

A.   Such **insured** unreasonably withholds consent to the settlement; or

B.   The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

III.    EXCLUSIONS

We will not pay damages because of any of the following, and we will not provide a defense for any suit alleging any of the following:

A.    In the case of any insured physician, liability arising out of the rendering of, or failure to render, professional services by any person other than such insured physician for whose acts or omissions such insured physician is liable solely by reason of his status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an insured organization);

B.    Liability of an insured as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.    Liability assumed by an insured under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such insured in the absence of such contract or agreement;

D.    Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.    Liability arising out of sexual activity, or acts in furtherance of sexual activity whether under the guise of professional services or not, on the part of an insured, or any person for whose acts or omissions such insured is legally responsible;

F.    Injury to any employee of an insured unless arising from the treatment of the employee as a patient of such insured;

G.    Any obligation for which an insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law;

H.    Liability arising out of any act or omission of an insured (1) for which such insured does not hold any required license to perform, (2) which occurs during any time such insured's license to practice his profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.    Liability arising out of any antitrust violation (except for antitrust violations arising from peer review services for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an insured; or

K.    Liability arising out of any claim or investigation instituted by a patient of any insured alleging errors or omissions by the insured in billing statements for professional services rendered to such patient.

IV.    LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the Coverage Summary as applicable to each insured physician shall apply to all claims or suits made or brought against such insured physician (except that claims or suits arising out of the rendering of, or failure to render, professional services by any person other than such insured physician for whose acts or omissions such insured physician may be held liable as a member, partner, officer, director or shareholder of an insured organization shall be charged against the limit of liability of the insured organization).

The limits of liability specified in the Coverage Summary as applicable to each insured paramedical employee shall apply to all claims or suits made or brought against such insured paramedical employee.

The limits of liability specified in the Coverage Summary as applicable to an insured organization shall apply to all claims or suits made or brought against (1) the insured organization; (2) any other covered employee; and (3) any insured physician, provided such liability arises out of the rendering of, or failure to render, professional services by any person other than such insured physician for whose acts or omissions such insured physician is liable solely by reason of his status as a member, partner, officer, director or shareholder of the insured organization.

The limit of liability specified in the Coverage Summary for each insured as "each medical incident" is the total of our liability to such insured resulting from any one medical incident. The limit of liability stated in the Coverage Summary for each insured as "annual aggregate" is the total limit of our liability to such insured resulting from all medical incidents which occur during the policy period.

The limit of liability shall apply regardless of:

A.   the number of persons or entities claiming **damages** covered by the **policy**;

B.   the number of claims or suits brought on account of a **medical incident**;

C.   the number of **insureds** under the **policy**; or

D.   the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only after exhaustion of the Primary Limits of Liability applicable to such **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **medical incident** in an amount equal to the Deductible shown in the **Coverage Summary**, and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, such **insured** shall reimburse **us** for the amount of any such payment. If any **insured** fails to make such reimbursement within thirty (30) days after written demand, the **policyholder** will pay **us** the amount due. Each **insured** and the **policyholder** agree to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

## V.   SUPPLEMENTARY PAYMENTS

**We** will pay, in addition to the applicable limit of liability:

A.   all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and all interest on the entire amount of any judgment therein which accrues after entry of judgment and before **we** have paid or tendered or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon;

B.   premiums on appeal bonds required in any suit defended by **us** and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of the **policy**, but **we** shall have no obligation to apply for or furnish any such bond; and

C.   reasonable travel and lodging expenses incurred by any **insured physician**, previously approved by **us**, and up to $500 per day for loss of time for each day such **insured physician** is required to attend the trial of a civil suit pertaining to a **medical incident**.

Medical Professional Liability Policy
©1999 Medical Assurance

# MEDICAL PROFESSIONAL LIABILITY POLICY
## PROFESSIONAL LEGAL DEFENSE COVERAGE PART
## EXTENDED FORM

| NOTE: This coverage is provided on a claims-made and reported basis. Please read it carefully. |
|---|

## I.  DEFINITIONS

Terms appearing in **bold face print** shall have the meanings given in the Definitions section of the **policy**. In addition:

**Appointed counsel** means the attorney or firm of attorneys appointed **by us** in writing to defend a **covered insured** in any **covered investigation**.

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit**. **Audit expenses** does not include any taxes, penalties or other expenses incurred by a **covered insured**.

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured physician** or **insured organization**.

**Covered investigation** means any one or more of the following:

A. An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA").

B. An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance of laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

C. An investigation or proceeding commenced by a **utilization and quality control peer review organization**, but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured**.

D. An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E. An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), whether or not the **covered insured** was in violation of such regulations.

F. An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G. A subpoena or request received by the **covered insured**, requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **medical incident**, but (2) in which the **covered insured** is not a party.

H. A claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** in the course of providing **professional services** to such patient.

I. A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional services** rendered to such patient.

J.   A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice.

K.   An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties which may be assessed in any **covered investigation** or paid in any settlement thereof or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other  health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

## II.    INSURING AGREEMENT

We will pay on behalf of any **covered insured** the **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.   the **medical incident** giving rise to the **covered investigation** occurred after the Retroactive Date applicable to this Coverage Part as stated in the **Coverage Summary** and prior to the termination of the **policy**;

B.   the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period**; and

C.   the **covered investigation** is first **reported** during the **policy period**.

We will pay on behalf of any **covered insured** the **audit expenses** incurred by such **covered insured** in the course of a **covered audit**, provided that:

A.   formal written notice of the investigation or proceeding to which the **covered audit** relates is first received by the **covered insured** during the **policy period**; and

B.   such investigation or proceeding is first **reported** during the **policy period**.

## III.   PERSONS INSURED

Only **covered insureds** are insured under this Coverage Part.

## LIMIT OF LIABILITY

The limit of liability specified in the **Coverage Summary** as "Each Covered Investigation" is the total of our liability to each **covered insured** for **legal expenses** resulting from any one **covered investigation**. The total limit of liability specified in the **Coverage Summary** as "Each Covered Audit" is the total of our liability to each **covered insured** for **audit expenses** resulting from any one **covered audit**. The limit of liability specified in the **Coverage Summary** as "Each Policy Period" is the total limit of our liability to all **covered insureds** for **audit expenses** and **legal expenses** resulting from all **covered investigations** which are first **reported** during the **policy period**.

## V.    REPORTING ENDORSEMENT PROVISIONS

If the insurance afforded by the **policy** to a **covered insured** terminates, either by nonrenewal or cancellation, such **covered insured** shall have the right, upon the payment of an additional premium (to be computed in accordance with our rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued an endorsement providing coverage for **covered investigations** otherwise covered by the **policy** but which are first **reported** after the termination of the **policy**. Such right must be exercised by a **covered insured** by providing written notice to **us** not later than thirty (30) days after such termination date.

## VI.    DEDUCTIBLE

Coverage for the **covered investigations** described in Items H through K of the definition of **covered investigation** is subject to a deductible of $ 1,000 .  For each such **covered investigation**, each **covered insured** shall be

required to pay **legal expenses** in an amount equal to such deductible before **our** obligation to pay **legal expenses** arises. In addition, for each **covered audit**, each **covered insured** shall be required to pay **audit expenses** in an amount equal to such deductible before **our** obligation to pay **audit expenses** arises.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# RENEWAL ENDORSEMENT

**POLICYHOLDER:** Mark S. Weinberger, M.D., P.C.

**POLICY NUMBER:** MP32800

**RENEWAL DATE:** 6/1/2001

This renewal of the **policy** is offered under certain conditions and in reliance upon the initial application and any subsequent applications each **insured** and the **policyholder** provided to **us**.

Further, as a condition to renewal of the **policy**, the **policyholder** and each **insured** represent and warrant that, except as otherwise disclosed to **us** in writing:

A.    no **insured** has had any state medical license, hospital privileges or license to prescribe or dispense medicine denied, suspended, restricted or revoked, nor has any such **insured** voluntarily surrendered any such license or privileges for any reason;

B.    no **insured** has (1) undergone psychiatric treatment, (2) been treated for alcohol or narcotics addiction, (3) had any chronic illness or physical defect, (4) been convicted of any misdemeanor or felony other than minor traffic violations, (5) appeared before any Professional Standards/Quality Assurance Review Committee or (6) appeared before any Board of Medical Examiners or Medical Licensure Commission; and

C.    no **insured** has changed the scope of his or her medical practice from that previously disclosed to **us** in his or her applications for insurance.

If, at any time while the **policy** is in effect, any of the events described in paragraph A, B, or C occur, the **policyholder** agrees to notify **us** within thirty (30) days of its occurrence, and to provide such additional information as **we** may require.

The **policyholder** acknowledges that information concerning any of the events described above is material to **our** agreement to provide insurance under the **policy** on the basis, and for the premium, stated in the **Coverage Summary**.

# MEDICAL PROFESSIONAL LIABILITY POLICY
# INDIANA STATE LAW ENDORSEMENT

**POLICYHOLDER:** Mark S. Weinberger, M.D., P.C.        **ENDORSEMENT**
**EFFECTIVE DATE:** 6/1/2001

**POLICY NUMBER:** MP32800

This Endorsement amends the Professional Liability Coverage Part of the **policy**.

Section II. of the Professional Liability Coverage Part (Investigation, Defense and Settlement) is hereby deleted and replaced by the following:

## II.   Investigation, Defense and Settlement

**We** have the right to investigate any **medical incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any such claim or suit defended by **us**.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by the **policy**; provided that no such settlement will be made without the written consent of the **insured** against whom the claim or suit is brought unless:

A.  Such **insured** unreasonably withholds consent to the settlement; or

B.      The settlement is made after a verdict or judgment has been rendered against such **insured**.

**We** may, however, settle without the consent of the **insured** any claim or suit filed in accordance with the provisions of Indiana Code 27-1-13-7 for which a medical review panel as established by Indiana Code 34-18-10-1 has issued a unanimous opinion that the **insured** failed to comply with the appropriate standard of care as charged in the claim or suit.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay damages or to defend any suit after the limit of liability applicable to an **insured** has been exhausted.

# MEDICAL PROFESSIONAL LIABILITY POLICY
## OCCURRENCE COVERAGE



# COVER PAGE

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary, we** agree to provide the insurance contained in the **policy.**

**THE COMPANY:**    The Medical Assurance Company, Inc.

**AGENT'S NAME AND ADDRESS:**
MacLennan & Bain Insurance
214 Aberdeen Drive
Valparaiso, IN  46385

**POLICYHOLDER:**    Mark S. Weinberger, M.D., P.C.
333 W. 89th Avenue, Suite W-1
Merrillville, IN  46410

**POLICY NUMBER:**  MP32800

The **policy** consists of this **Cover Page** and the following forms (together with any endorsements issued from time to time).

| Title | Form Number |
|---|---|
| Coverage Summary | MAI-MP-020 09 99.OCC |
| Medical Professional Liability Policy | MAI-MP-030 01 02.OCC |
| Professional Legal Defense Coverage Part - Extended Form | MAI-MP-071 08 01.OCC |
| Renewal Endorsement | MAI-MP-500 09 99 |
| Indiana State Law Endorsement | MAI-MP-606 09 99.IN |

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.

ROBERT D. FRANCIS
Secretary

A. DERRILL CROWE, M.D.
President

COPY

# MEDICAL PROFESSIONAL LIABILITY POLICY
## COVERAGE SUMMARY

1. Policyholder's Name and Address:

   Mark S. Weinberger, M.D., P.C.

   333 W. 89th Avenue, Suite W-1

   Merrillville, IN 46410

2. Policy Number: MP32800

3. Policy Period: From 6/1/2002 to 6/1/2003 12:01 a.m. Standard Time at the address of the **policyholder** as stated above.

4. Total Premium: $14,420.00 (Does not include Indiana PCF surcharge in the amount of $8,414.00)

5. Schedule of Insureds (Primary Coverage)
   The following are **insureds** under the **policy**, with the following respective limits of liability:

Primary Limits of Liability

| Name | Each Medical Incident | Annual Aggregate | Deductible | Premium |
|------|------|------|------|------|
| INSURED ORGANIZATIONS | | | | |
| Mark S. Weinberger, M.D., P.C. | $250,000 | $750,000 | N/A | $100 |
| The Nose and Sinus Center, LLC | $250,000 | $750,000 | N/A | $100 |
| Rejuvenating Laser Spa, LLC | $250,000 | $750,000 | N/A | $100 |
| INSURED PHYSICIANS | | | | |
| Mark S Weinberger, M.D. | $250,000 | $750,000 | N/A | $14,120 |

6. Professional Legal Defense Coverage Premium:  $500.00 included above.

Limits of Liability NOTE: These limits apply only to legal expenses incurred by covered insureds under the Professional Legal Defense Coverage Part, and not to defense costs incurred which are otherwise covered under the Professional Liability Coverage section or other parts of the policy.

Retro Active Date: 9/23/1996

| | Each Medical Incident |
|---|---|
| Each Covered Investigation | $25,000 |
| Each Covered Audit | $5,000 |
| Each Policy Period | $25,000 |

By: _____
Authorized Representative



**Medical
Assurance**

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| | |
|---|---|
| **Policy No.:**  MP32800 DF624658 | X Occurrence |
| | ☐ Claims Made |
| | Retro Active Date |
| **Health Care Provider:**  Mark S Weinberger, M.D. | X including employees |
| | ☐ excluding employees |
| **Medical License No.:**  01045912 | |
| **Address (Street, City, State, Zip):**  333 W. 89th Avenue, Suite W-1  Merrillville, IN 46410 | **County:**  Lake |
| **Coverage Dates** | **Classification Number:**  80155 |
| From:  6/1/2002  To  6/1/2003 | |
| **Limits of Liability**  $250,000 per incident  $750,000 annual aggregate | **Surcharge Amount Paid:**  $8,114 |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of  $ 8,114 for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2002, at the Home Office of Medical Assurance of Indiana.

Signed by: _Lois J. Wyrick_
(Authorized Representative)

MAI-UF-200 07 99                    © 1999 Medical Assurance, Inc.



**Medical
Assurance**

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| Policy No.:   MP32800 UE621793 | | X | Occurrence |
|---|---|---|---|
| | | | Claims Made |
| | | | Retro Active Date |
| Health Care Provider:   Mark S. Weinberger, M.D., P.C. | | X | including employees |
| | | | excluding employees |
| Medical License No.:   01045912 | | | |
| Address (Street, City, State, Zip):   333 W. 89th Avenue, Suite W-1   Merrillville, IN 46410 | County:   Lake | | |
| Coverage Dates | Classification Number:   80999 | | |
| From:   6/1/2002   To   6/1/2003 | | | |
| Limits of Liability | Surcharge Amount Paid:   $ 100 | | |
| $250,000   per incident   $750,000   annual aggregate | | | |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of $ 100 for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2002, at the Home Office of Medical Assurance of Indiana.

Signed by: _Lois J. Wyrick_
(Authorized Representative)

MAI-UF-200 07 99                              © 1999 Medical Assurance, Inc.



**Medical
Assurance**

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| | |
|---|---|
| Policy No.:     MP32800 NC676980 | [X] Occurrence<br>[ ] Claims Made<br>Retro Active Date |
| Health Care Provider:    The Nose and Sinus Center, LLC<br><br>Medical License No.: | [X] including employees<br>[ ] excluding employees |
| Address (Street, City, State, Zip):    333 W. 89th Avenue, Suite W-1<br>Merrillville, IN 46410 | County:    Lake |
| Coverage Dates<br><br>From:    6/1/2002    To    6/1/2003 | Classification Number:    80999 |
| Limits of Liability<br><br>$250,000    per incident    $750,000    annual aggregate | Surcharge Amount Paid:    $ 100 |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of  $ _100_ for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2002, at the Home Office of Medical Assurance of Indiana.

Signed by: _Lois J. Wynick_
(Authorized Representative)

MAI-UF-200 07 99                                © 1999 Medical Assurance, Inc.



**Medical
Assurance**

# CERTIFICATE OF INSURANCE

To: Indiana Patient's Compensation Fund
Medical Malpractice Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

| | |
|---|---|
| Policy No.:    MP32800 UU676982 | [X] Occurrence<br>[ ] Claims Made<br>Retro Active Date |
| Health Care Provider:    Rejuvenating Laser Spa, LLC<br><br>Medical License No.: | [X] including employees<br>[ ] excluding employees |
| Address (Street, City, State, Zip):    333 W. 89th Avenue, Suite W-1<br>Merrillville, IN 46410 | County:    Lake |
| Coverage Dates<br><br>From:   6/1/2002    To    6/1/2003 | Classification Number:    80999 |
| Limits of Liability<br><br>$250,000    per incident    $750,000    annual aggregate | Surcharge Amount Paid:    $ 100 |

The undersigned Insurance Company, hereby certifies limits of liability on behalf of the above referenced Health Care Provider of not less than Two Hundred and Fifty Thousand ($250,000) Dollars for each occurrence and not less than its annual aggregate as required by statute for claims against said Health Care Provider as a result of Medical Malpractice, or allegation thereof, within the State of Indiana, and further that said policy of insurance complies in all respects with the provisions of the Indiana Patient's Compensation Act now known as Public Law 111, Acts 1998.

It is further certified that the surcharge for the above referenced coverage for the period specified in this policy is at a rate of  $ 100 for the named specialty or One Hundred Percent (100%) of the premium of $_____ for non-physicians or non-hospital providers and said Company agrees to collect and remit the rated surcharge or a minimum surcharge of One Hundred ($100) Dollars for each year of the period of coverage, whichever is larger, to the Department of Insurance, Patient's Compensation Fund, State of Indiana, within ninety (90) days from the effective date of said policy.

It is further acknowledged that in the event of termination of the policy herein certified, or any reduction of liability limit, such termination or change shall not be effective unless notice of same has been delivered to the Department of Insurance, State of Indiana, no less than thirty (30) days prior to such change. Notice shall be considered to have been given upon placing same in the United States Mail by First Class Mail, a copy of which shall have been mailed to the Health Care Provider.

Dated this 1 day of June 2002, at the Home Office of Medical Assurance of Indiana.

Signed by: _Lois J. Wyrick_
(Authorized Representative)

MAI-UF-200 07 99                    © 1999 Medical Assurance, Inc.

# MEDICAL ASSURANCE OF INDIANA
## SCHEDULE OF PREMIUMS AND INDIANA PCF SURCHARGE

*(This schedule is provided for the convenience of the client and is not a part of the policy contract)*

Policyholder's Name and Address:    Mark S. Weinberger, M.D., P.C.
333 W. 89th Avenue, Suite W-1
Merrillville, IN 46410

**AGENT'S NAME & ADDRESS:**
MacLennan & Bain Insurance
214 Aberdeen Drive
Valparaiso, IN 46385

Policy Number: MP32800

Policy Period:  From  6/1/2002      to     6/1/2003

Schedule of Insureds:

| Name | PCF ISO Code | Specialty Description | Coverage Premium | Indiana PCF Surcharge | Insured Total |
|---|---|---|---|---|---|
| | | | | | |
| INSURED ORGANIZATIONS | | | | | |
| Mark S. Weinberger, M.D., P.C. | 80999 | Medical Organization | $100.00 | $100.00 | $200.00 |
| The Nose and Sinus Center, LLC | 80999 | Medical Organization | $100.00 | $100.00 | $200.00 |
| Rejuvenating Laser Spa, LLC | 80999 | Medical Organization | $100.00 | $100.00 | $200.00 |
| | | | | | |
| INSURED PHYSICIANS | | | | | |
| Mark S Weinberger, M.D. | 80155 | Plastic-Otorhinolaryngology-mjrSurgery | $14,120.00 | $8,114.00 | $22,234.00 |

Total:   $14,420.00    $8,414.00    $22,834.00

# MEDICAL PROFESSIONAL LIABILITY POLICY

## DEFINITIONS

As used in the **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Medical Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Medical Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable because of injury, including death.

**Insured** means any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Medical incident** means:

   A.   a single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**; or

   B.   a single act or omission or a series of related acts or omissions by an **insured physician** during the performance of **peer review services** which results, or is likely to result, in **damages**.

   For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **medical incident**, and a continuing course of **professional services** relating to substantially the same medical condition constitutes a single **medical incident**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured physician** while acting within the scope of his duties as a member of:

   A.   a utilization and quality control peer review organization acting under contract with the U.S. Department of Health and Human Services to review the professional activities of health care providers;

   B.   a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical staff;

   C.   a duly constituted hospital or surgery center staff committee, consisting solely of members of the medical staff of such hospital or surgery center, for the evaluation and improvement of quality of care;

   D.   a duly constituted hospital peer review committee, consisting solely of members of the medical staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

   E.   any peer review program conducted by **us**.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **medical incident** occurs shall apply to that **medical incident**.

---

Medical Professional Liability Policy
©2002 Medical Assurance

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional services** means the provision of medical services, including medical treatment, making medical diagnoses and rendering medical opinions or medical advice.

**We, our** and **us** refer to the company issuing the **policy**, which is designated as "THE COMPANY" on the **Cover Page**.

# GENERAL CONDITIONS

## I. PREMIUM

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

## II. RIGHTS AND DUTIES OF POLICYHOLDER

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under the **policy**. However, the **policyholder** shall pay all premiums and receive all notices and invoices under the **policy**, and all provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

## III. INSPECTION

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

## IV. INSUREDS' DUTIES IN THE EVENT OF INCIDENT, CLAIM OR SUIT

A. When an **insured** becomes aware of any claim or suit to which this insurance applies, or any incident which is likely to result in such a claim or suit, such **insured** or his representative must report such incident, claim or suit to **us** as soon as practicable.

B. Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under the **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured's** legal counsel.

C. If claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by him or his representative.

D. No **insured** shall alter patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

If any **insured** fails to comply with his obligations under the **policy**, **our** obligations to such **insured** under the **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V. CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the **policy**, nor until the amount of any **insured's** obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under the **policy** to the extent of the insurance afforded by the **policy**. No person or organization shall have any right under the **policy** to join **us** as a party to any action against an **insured** to determine the **insured's** liability, nor shall **we** be impleaded by an **insured** or his legal representative. Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder. Any claim against **us** shall be settled by arbitration as provided in Section XIII below.

## VI. OTHER INSURANCE

A. With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by the **policy** is excess over any **other insurance**.