```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         LAFAYETTE DIVISION

THE MEDICAL ASSURANCE COMPANY,  )
INC.,                           )
                                )
            Plaintiff           )
                                )
       v.                       )   Case No. 4:06 cv 117
                                )
MARK S. WEINBERGER, M.D.,       )
et al.,                         )
                                )
            Defendants          )
```

## OPINION AND ORDER

This matter is before the court on the Motion to Stay filed by the defendant, James Atterholt, Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient Compensation Fund, on May 2, 2007. For the reasons set forth below, this motion is **GRANTED.**

## Background

The defendant, Dr. Mark Weinberger, was an ear, nose and throat specialist – an otolaryngologist – who practiced in Merrillville, Indiana, through a series of entities including the Nose and Sinus Center, LLC, Subspecialty Centers of America, LLC, and Merrillville Center for Advanced Surgery, LLC. (Amended Complaint, ¶ 25)

From June 2004 until April 2006, more than 300 complaints were filed against Weinberger or his entities alleging medical malpractice. (Cmpl. ¶ 24) These complaints include allegations that Weinberger performed unnecessary surgery, performed surgery negligently, and in at least two instances, obtained consent for

surgery fraudulently. (Cmpl. ¶ 24)

In September 2004, while vacationing with his family in Greece, Weinberger "went for a run" and never returned. (Cmpl. ¶ 17) The plaintiff and medical malpractice insurance provider to Weinberger, Medical Assurance Company, alleged that he intentionally fled the country to avoid liability on the mounting number of claims that he faced. (Cmpl. ¶¶ 3, 18-23)

Medical Assurance now seeks a declaration that Weinberger's disappearance constitutes a failure to cooperate in the defense of these claims. This failure, according to Medical Assurance, warrants the denial of coverage according to the terms of the policies. Similarly, regarding the claims that are based on allegations that Weinberger obtained consents fraudulently, Medical Assurance seeks a declaration that the policy's "fraud exclusion" provides a separate basis to deny coverage in these instances.

In this action, Medical Assurance has sued Weinberger individually, the entities under which he practiced, the more than 300 claimants (represented in two group  - the Thomas defendants and the Verhoeve defendants), and the Indiana Department of Insurance Patient Compensation Fund ("PCF"). The interest of the PCF arises under the Indiana Malpractice Act, which provides that if a medical malpractice insurer fails to pay a settlement or final judgment, these funds will be paid by the PCF. Indiana Code §34-18-15-4

The Honorable Allen Sharp conducted a preliminary pretrial conference on March 2, 2007, and raised concern over the court's

2

exercise of jurisdiction and the potential application of abstention. The parties were directed to file status reports addressing these issues. On May 1 and May 2, 2007, separate reports were filed by Medical Assurance (DE 69), the Thomas defendants (DE 68), the Verhoeve defendants (DE 75), and the PCF (DE 74). At that time, the PCF also filed this motion to stay based upon the arguments identified in its status report. The PCF filed a response to Medical Assurance's status report on May 25, 2007. (DE 84)

## Discussion

As a federal court sitting in diversity, the court applies federal procedural rules and state substantive law. **Erie Railroad Company v. Tompkins**, 304 U.S. 64, 79, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938); **Gasperini v. Center for Humanities, Inc**., 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). The remedy of declaratory relief from the court is a procedural device. Accordingly, the federal Declaratory Judgement Act, and not the comparable Indiana Act, is applicable to this matter. *See* **Institute for Studies Abroad, Inc. v. International Studies Abroad, Inc**., 263 F.Supp.2d 1154, 1156-57 (S.D. Ind. 2001); **Scottsdale Insurance Company v. Subscriptions, Plus, Inc**., 2000 WL 34238652 (W.D. Wis. Oct. 12, 2000)(*citing* **Hanna v. Plummer**, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965))("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases."). The parties do not dispute that the substantive issues regarding the

insurance contracts are controlled by the law of Indiana. Both parties cite from Indiana cases in regards to the policy questions, though neither party specifically has confronted the question. The court presumes the application of Indiana law to the substantive question of the insurance policies. **Peterson v. Sealed Air Corp.**, 902 F.2d 1232, 1234 (7th Cir. 1990)("The parties assume that Illinois law supplies the statute of limitations . . . .  Whatever we might have thought of the subject given Illinois' borrowing statute, Ill.Rev.Stat. ch. 110 ¶ 13-210, we shall accept the parties' silence as dispositive.").

The distinction between a declaration of an insurer's duty to indemnify and a declaration of an insurer's duty to defend requires the court to consider the issue of subject matter jurisdiction. The question of an insurer's duty to indemnify before a liability determination has been made generally is considered not ripe, depriving the court of subject matter jurisdiction. **Lear Corporation v. Johnson Electric Holdings Limited**, 353 F.3d 580, 583 (7th Cir. 2003) (*quoting* **Nationwide Insurance Company v. Zavalis**, 52 F.3d 689, 693 (7th Cir. 1995) ("The duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."). The ripeness necessary to meet a jurisdictional requirement must demonstrate a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." **Nucor Corporation v. Aceros Y Maquilas De Occidente, S.A. DE C.V.**, 28 F.3d

4

572, 577 (7th Cir. 1994)*(quoting* **Maryland Casualty Company v. Pacific Coal & Oil Company**, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

In contrast, the duty to defend generally does not implicate the same justiciability concerns over ripeness raised by declarations regarding the duty to indemnify. **Lear Corporation**, 353 F.3d at 583) ("Declaratory decisions about indemnity differ in this respect from the more common decision that an insurer has a duty to defend the client in ongoing litigation."). Insurance coverage disputes in addition to the duty to defend routinely are found ripe for federal jurisdiction under the Declaratory Judgment Act. Ultimately, ripeness is a matter of degree, gauged by the probability that an injury will occur. **Bankers Trust Company v. Old Republic Insurance Company**, 959 F.2d 677, 681 (7th Cir. 1992). And, provided a sufficient probability of injury, in the context of insurance policies, courts have held jurisdiction over declaratory judgments regarding "the validity of a policy" and "the coverage of a liability policy." 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §2760 (3d 1998); **City of Chicago v. Arvinmeritor, Inc.**, 2006 WL 3431910 (N.D. Ill. 2006, Nov. 28, 2006) ("Furthermore, in the insurance context, claims over defense obligations are generally always regarded as ripe for adjudication during pending primary lawsuits, even when it is unclear whether the particular insurance policy contains a duty to defend."). *See also* **Shelby Casualty Insurance Company v. Statham**, 158 F.Supp.2d 610, 619 (E.D. Pa.

5

2001)("Since there is a genuine dispute about the legal relationship between the parties and since none of the issues involved in this declaratory judgment action will be or need to be decided in the tort suit or claim against the insurer of the motorcycle, we hold that there is an actual controversy and that the action is not premature.").

Medical Assurance glosses over this distinction by arguing that if an insurer does not have a duty to defend, naturally it has no duty to indemnify. This one-sided approach does not acknowledge instances in which the court finds that an insurer *does* have a duty to defend. In that event, if there has been no finding of liability in some underlying proceeding, it is beyond the court's exercise of jurisdiction to render a declaration regarding indemnity. *See* **Lear Corporation**, 353 F.3d at 583 ("A declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake . . ."). In this instance, X has not come to pass. Accordingly, the court will not follow Medical Assurance's suggestion and merge the duty to defend and the duty to indemnify into a single consideration. To the extent that Medical Assurance seeks a declaration regarding its ultimate duty to indemnify, this question is not ripe.

The parties' dispute over the extent of the coverage under the policy does not suffer from the same lack of ripeness faced by a dispute over the duty to indemnify. However, the specific

6

nature of the coverage dispute must be identified clearly to resolve the parties' dispute regarding the court's discretion to abstain.

At the outset, the court must clarify the standard by which abstention is assessed in this matter. Medical Assurance relies in part on the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In particular, Medical Assurance notes that cases decided under *Colorado River* benefit from a presumption against abstention and that federal courts are under a "virtually unflagging obligation to exercise the jurisdiction given them."

Medical Assurance, however, cannot benefit from the stringent two-part inquiry of *Colorado River*. *See Truserv Corporation v. Flegles,* 419 F.3d 584, 593 (7th Cir. 2005) ("We again emphasize the remarkably difficult standard that must be met before we can refuse our virtually unflagging obligation to exercise jurisdiction."). *Colorado River* regards claims for damages. In contrast, a separate standard is applied to claims arising under the Declaratory Judgment Act.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §2201. A federal court enjoys "unique and substantial discretion" in deciding whether to grant declaratory relief under the Act. *Wilton v. Seven Falls*

*Company*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). *See also* **Sta-Rite Industries, Inc. v. Allstate Insurance Company**, 96 F.3d 281, 287 (7th Cir. 1996); **Pence v. Lightning Rod Mutual Insurance Company**, 203 F.Supp.2d 1025, 1028 (S.D. Ind. 2002).  This broad discretion is distinct from **Colorado River** abstention doctrine. **Pence**, 203 F.Supp.2d at 1028. *See also* **Colorado River**, 424 U.S. at 818, 96 S.Ct. at 1246. Rather, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." **Wilton**, 515 U.S. at 288, 115 S.Ct. at 2143. *See also* *Zavalis*, 52 F.3d at 692. Furthermore, when a parallel state case is pending, a stay is the "preferable course" because it provides the state court with the opportunity to resolve the matter without risking a time bar to any unresolved claims in the federal forum. **Wilton**, 515 U.S. at 288 n.2, 115 S.Ct. at 2143 n.2; **Brillhart v. Excess Insurance Company of America**, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942). The Seventh Circuit generally assesses four elements to determine whether a stay is appropriate under the Declaratory Judgment Act. *See* **Zavalis**, 52 F.3d 692; **Nucor Corporation**, 28 F.3d at 579. According to the Seventh Circuit, the court should consider:

> [1] whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding; [2] whether the parties to the two actions are identical; [3] whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships

8

>     among the parties or will merely amount to
>     duplicative litigation; and [4] whether com-
>     parable relief is available to the plaintiff
>     seeking a declaratory judgment in another
>     forum or at another time.

*Zavalis*, 52 F.3d at 692

These factors are not exclusive and should be applied in conjunction with other considerations of efficiency and wise judicial administration, such as whether declaratory judgment would "provide an arena for a race to res judicata" or increase friction between federal and state courts. *Nucor Corporation*, 28 F.3d at 579 (*citing* *Nationwide Mutual Fire Insurance Company v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991)). *See also* *Green v. Mansour*, 474 U.S. 72, 73, 106 S.Ct. 423, 427-28, 88 L.Ed.2d 371 (1985) (stating that questions of discretion should consider "equity, comity and federalism.").

In addition, the Seventh Circuit interprets the "parallel suit" requirement to mean not identical, but substantially the same parties and issues between the federal and state cases. *See* *Sta-Rite*, 96 F.3d at 287 (implicitly treating two suits involving the same plaintiff and issue, one in federal and one in state court, as parallel though against different defendants); *Zavalis*, 52 F.3d at 692 ("Whether the parties to the two actions are identical" is just one factor in determining the relevancy of a pending state action). *See* *Pence*, 203 F.Supp.2d at 1027 (granting a stay when all the issues before the federal court were present in other state court proceedings except the plain-tiff's claim for damages, which was dependent for its resolution

9

upon the related state court claims). *See also* **The Sherwin-Williams Company v. Holmes County**, 343 F.3d 383, 392-94 (5th Cir. 2003) (collecting cases in which federal appellate courts have upheld the district court's discretion to dismiss a declaratory action when no parallel state action has been filed).

Medical Assurance bases its request for a declaration on the policy's cooperation clause. This provision states that Medical Assurance has no duty to defend if the insured fails to "cooperate with the company . . . in making settlement [and] in the conduct of suits." (Cmpl. Ex. B) Medical Assurance argues that Weinberger's disappearance is the equivalent of a failure to cooperate, which in turn voids his coverage under the policy. The PCF counters that resolution of whether Weinberger has failed to cooperate must assess the substance of each of the more than 300 malpractice claims. According to the PCF, because a decision in this case requires inquiry into the merits of these underlying cases, abstention is appropriate.

In Indiana, an insurer seeking to avoid the terms of a policy on the basis that the insured breached the cooperation clause must show that the breach (1) was intentional, (2) that the insurer has made diligent efforts to obtain cooperation, and (3) that the failure to cooperate prejudiced the defense. **Smithers v. Mettert**, 513 N.E.2d 660, 662 (Ind. App. 1987); **Wood v. Allstate Insurance Company**, 21 F.3d 741, 745 (7th Cir. 1994) (*quoting* **Miller v. Dilts**, 463 N.E.2d 257, 261 (Ind. 1984))("[A]n insurance company must show actual prejudice from an insured's

10

noncompliance with the policy's cooperation clause before it can avoid liability under the policy."). Recently, the Seventh Circuit has noted that the Indiana Supreme Court reaffirmed the requirement of actual prejudice in proving the breach of a cooperation clause. *Employers Mutual Casualty Company v. Skoutaris*, 453 F.3d 915, 924 (7th Cir. 2006)(*citing Morris v. Economic Fire and Casualty Company*, 848 N.E.2d 663, 666 (Ind. 2006)).

Prejudice to the insurer's defense is not presumed by the fact of the defendant's absence. *See The Cincinnati Insurance Company v. Irvin*, 19 F.Supp.2d 906, 915 (S.D. Ind. 1998)(collecting cases). Rather, the likelihood of actual prejudice presents a question of fact that addresses the probability that the outcome of the underlying case would have been altered by the insured's presence. *See e.g. Cincinnati Insurance*, 19 F.Supp.2d at 916 ("After carefully reviewing the transcript of the underlying trial, and the unsavory facts that would have been developed if the insured testified, the district court found the insurer was not prejudiced by the insured's absence."). The reasoning of the majority of courts supports the conclusion that actual prejudice ultimately looks to the outcome of the underlying case. *See Billington v. Interinsurance Exchange of Southern California*, 71 Cal.2d 728, 737, 456 P.2d 982, 987-987 (1969) ("We hold, therefore, that an insurer, in order to establish it was prejudiced by the failure of the insured to cooperate in his defense, must establish at the very least that if the cooperation clause had

11

not been breached there was a substantial likelihood the trier of fact would have found in the insured's favor."); *MFA Mutual Insurance Company v. Cheek*, 363 N.E.2d 809, 813 (Ill. App. 1977); *Montgomery v. Preferred Risk Mutual Insurance Company*, 411 P.2d 488, 490-91 (Utah, 1966); *Brooks v. Haggard*, 481 P.2d 131, 134 (Colo. App. 1970)("However, if, after consideration of all factors involved, it appears that the presence of the insured or his testimony was so potentially valuable as to have materially affected the outcome of the trial, then his nonappearance is regarded as a material or prejudicial breach of the policy.").

Medical Assurance argues against any application of *Cincinnati Insurance* because the case was decided at the summary judgment stage and because it did not speak to the entry of a stay. There is no real dispute of either point. However, Medical Assurance has not addressed, and cannot avoid by disregarding *Cincinnati Insurance*, the elements necessary to show breach of a cooperation clause. Regardless of the procedural stance of the case, Medical Assurance's claim that the cooperation clause was breached still must address actual prejudice. In its response, Medical Assurance provides no argument that the question of prejudice can be resolved without inquiring into the same factual circumstances at issue in the state proceedings. *See Zavalis*, 52 F.3d at 695 (upholding denial of stay when the evaluation did not include "any excursion into fact finding that would interfere with the . . . state court suit.").

In order to determine whether the cooperation clause was

breached by Weinberger, this court must look into the factual circumstances and defenses that likely would have been available on behalf of Weinberger but are not because of his absence. Further, in ruling on Medical Assurance's declaratory judgment claim, the court also would be required to assess the materiality of these absent defenses. Though the district court may not need to go so far as to render a conclusive determination of liability, the court would be required to assess and predict the likely outcome of the malpractice claims and reach numerous conclusions along the way that expressly address Weinberger's relationship with the more than 300 claimants. For instance, whether Weinberger can offer material support in defense of a charge of performing negligent surgery cannot be made without factual inquiry into the surgery itself and whether its performance was negligent. Likewise, for the district court to rule on the materiality of Weinberger's defense to charges of obtaining fraudulent consents or performing unnecessary surgeries would require the court to address the factual circumstances and merits of each of those patient's claims.  Superficially, it may be argued that Medical Assurance's declaratory judgment claim involves only a matter of law regarding the relationship between Weinberger and his insurer. In fact, Medical Assurance's claim would require the district court to delve deeply into the factual setting and merits of the underlying malpractice claims.

Under ***Wilton***, this degree of overlap between the state and federal courts warrants a stay of the declaratory judgment claim.

In addition, the possibility that many of the underlying claims are before the medical review panel, and not before an Indiana state court, does not preclude *Colorado River* abstention. *See Rodriguez v. Ramsey*, No. 03 C 3930, 2004 WL 2793150 at *2 (N.D. Ill. Jan. 28, 2004). In fact, the court notes that the procedural stance of the underlying state claims implicates further considerations that are not present in the more common automobile accident setting under which these issues arise. Specifically, Indiana law requires that a plaintiff first submit malpractice claims to a medical review board. *See* I.C. 34-18 *et. seq.*

To the extent that the federal court's ruling may remove issues, for instance through the application of *res judicata*, from the malpractice proceedings, it provides additional support to a stay in this matter. While the lack of exhaustion in the state medical malpractice proceedings may not be a strict bar to the exercise of subject matter jurisdiction in a declaratory judgment claim, under *Wilton*, this factor weighs toward abstention. *See Jones v. Griffith*, 870 F.2d 1363, 1368-69 (7th Cir. 1989); *Todd v. Merrell Dow Pharmaceuticals, Inc*., 942 F.2d 1173, 1177 n.2 (7th Cir. 1991). *See also Lyons v. Lutheran Hospital of Indiana*, 1:04 CV 728, 2004 WL 2272203 at *2 n.1 (S.D. Ind. Sept. 15, 2004)(*quoting Johnson v. Methodist Hospital of Gary*, 547 F.Supp. 780, 782 (N.D. Ind. 1982)("In cases where the Indiana Medical Malpractice Act applies, the Indiana Courts have no jurisdiction until the review panel issues its opinion, and the federal district court is bound by this decision in a diversity

14

suit."). This court recognizes that the Indiana legislature has placed questions regarding the standard of care provided by Indiana physicians foremost with the medical review panel. The court also finds that it is in the interest of comity and federalism to permit the initial airing of these issues to occur according to Indiana's Medical Malpractice Act. Accordingly, the PCF's motion for a stay is **GRANTED**.

_____

For the foregoing reasons, the Motion to Stay filed by the defendant, James Atterholt, Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient Compensation Fund, on May 2, 2007, is **GRANTED**.

ENTERED this 27th day of September, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge