UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| THE MEDICAL ASSURANCE COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:06-CV-117-AS |
| ) | |
| MARK S. WEINBERGER, M.D., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM, OPINION AND ORDER**

This matter is before the Court on the Motion for Review of Magistrate Judge Decision [DE 94] filed by Plaintiff The Medical Assurance Company, Inc. on October 24, 2007. The Court heard oral argument on this motion in Lafayette, Indiana on June 6, 2008, and the issues have been fully briefed. After the oral argument hearing, the Thomas Defendants filed a Notice of Jurisdictional Defect [DE 125]. That notice has also been fully briefed and will be dealt with in conjunction with the Motion for Review. For the reasons that follow, the court adopts the Magistrate Judge's order relating to disposition of the Defendants' Motion to Stay.

I. Factual Background and Procedural History

The Complaint for Declaratory Judgment [DE 1] was filed by ProNational Insurance Company on August 1, 2006. It stated that ProNational is an insurance company incorporated in the State of Michigan authorized to do business in the State of Indiana and that ProNational has its principal place of business in Alabama. Then, on November 1, 2006, an Amended Complaint for Declaratory Judgment [DE 43] was filed, naming as Plaintiff The Medical Assurance Company, Inc. ("Plaintiff" or "Medical Assurance"). Medical Assurance is an insurance company incorporated in the State of Alabama and authorized to do business in the State of

Indiana, with its principal place of business in Alabama.[1]

The Amended Complaint names Mark S. Weinberger, M.D. ("Dr. Weinberger) as a Defendant. Dr. Weinberger was an ear, nose and throat specialist who practiced in northwest Indiana, through a series of entities including The Merrillville Center for Advanced Surgery, LLC, The Nose and Sinus Center, LLC, and Subspecialty Centers of America, LLC (collectively, the "Entity Defendants"). Amended Complaint at ¶ 25. Dr. Weinberger is the sole principal and/or owner of each of the Entity Defendants. His last known residence was in Chicago, Illinois. Dr. Weinberger and the Entity Defendants will be referred to as the "Weinberger Defendants" for purposes of this order.

The Amended Complaint also alleges that the Verhoeve Claimants, Thomas Claimants, and Remaining Claimants are plaintiffs in connection with more than 300 complaints that were filed against Dr. Weinberger with the Indiana Department of Insurance (the "IDOI") between June 2004 and April 2006. In those complaints, the Verhoeve Claimants, Thomas Claimants, and Remaining Claimants allege that the Weinberger Defendants were negligent in connection with their provision of medical treatment and that, as a proximate result, the Claimants were damaged. The complaints include allegations that Dr. Weinberger performed unnecessary surgery, performed surgery negligently, and in at least two instances, obtained consent for surgery fraudulently. The Verhoeve Claimants, Thomas Claimants, and Remaining Claimants are named as Defendants in this case because they have potential interest in the proceeds of the Policies.

Finally, the Amended Complaint names James Atterholt, Commissioner of the Indiana

---

[1] Medical Assurance is an affiliate of ProNational Insurance Company.

Department of Insurance ("IDOI") and Administrator for the Indiana Patient's Compensation Fund ("PCF"), as a Defendant because the PCF may have an interest in the proceeds of the Policies, pursuant to IND. CODE § 34-18-15-4.[2]

The basic claims are as follows: In September 2004, Dr. Mark S. Weinberger disappeared. While vacationing with his family in Greece, Dr. Weinberger "went for a run" and never returned. Complaint at 17. Medical Assurance alleges that Dr. Weinberger fled and disappeared for the purpose of evading potential liability in connection with hundreds of medical malpractice and other lawsuits and claims filed by former patients, alleging negligent medical care and other wrongdoing against him and various entities of which he is the sole and principal owner.

Medical Assurance asserts that under the relevant professional liability insurance policies held by Dr. Weinberger, if he or the other named insureds (e.g. the entities) fail to cooperate with the defense of a claim, the insurance company may deny insurance coverage. Medical Assurance ultimately seeks an order declaring that: (1) the Weinberger Defendants have failed and refused to assist and/or cooperate with the defense of the identified claims; (2) Dr. Weinberger's failure to assist and/or cooperate in the defense of the claims constitutes a material breach of the insurance contracts; (3) Medical Assurance has been prejudiced by Dr. Weinberger's failure and refusal to cooperate with his defense or the defense of the Entity Defendants; (4) Medical Assurance is under no obligation to defend the various claims; and (5) Medical Assurance is under no obligation to pay any judgments, damages, costs, or expenses associated with or that

---

[2]The interest of the PCF arises under the Indiana Malpractice Act, which provides that if a medical malpractice insurer fails to pay a settlement or final judgment, those funds will be paid by the PCF.

arise out of the claims against the Weinberger Defendants.  Medical Assurance also seeks a declaration that Dr. Weinberger's failure to cooperate in the defense of the claims warrants the denial of coverage according to the terms of the policies and a declaration that the policy's "fraud exclusion" provides a separate basis to deny coverage in instances where Dr. Weinberger obtained consents fraudulently.

On March 2, 2007, this Court held a Rule 16 Preliminary Pretrial Conference.  The Court expressed concern about whether it would have to decide the nearly three hundred underlying medical malpractice claims to decide the complaint for declaratory judgment.  The Court ordered the parties to brief whether the Court is authorized to abstain in this case until the underlying state proceedings are decided.  Subsequently, Defendant James Atterholt, Commissioner of the IDOI and Administrator of the Indiana PCF filed a Motion to Stay [DE 72].

Magistrate Judge Andrew P. Rodovich granted Defendants' Motion to Stay in an order [DE 91] issued on September 27, 2007.  Magistrate Judge Rodovich noted that while the lack of exhaustion in the state medical malpractice proceeding may not be a strict bar to the exercise of subject matter jurisdiction in a declaratory judgment claim, this factor weights towards abstention.  Magistrate Judge Rodovich stated, "[t]his court recognizes that the Indiana legislature has placed questions regarding the standard of care provided by Indiana physicians foremost with the medical review panel.  The court also finds that it is in the interest of comity and federalism to permit the initial airing of these issues to occur according to the Indiana Medical Malpractice Act."  DE 91 at 15.  As such, Magistrate Judge Rodovich determined that the PCF's motion for a stay should be granted.  On October 24, 2007, Medical Assurance filed a Motion for Review of Magistrate Judge Decision [DE 94].

II.  Standard of Review

Federal Rule of Civil Procedure 72(b) requires that once a timely objection to a magistrate judge's decision has been filed, the district court must make a de novo determination as to any portion of the report to which an objection is made.  The court may then accept, reject, or modify the recommended decision.  FED. R. CIV. P. 72(b). The district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  FED. R. CIV. P. 72(b).  The "clear error" standard means "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus., Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

III.  Discussion

As an initial matter, the court must address the Thomas Defendants' Notice of Jurisdictional Defect [DE 125].  The Thomas Defendants state that "ProNational and/or Medical Assurance alleged 'on information and belief' that all the defendants with claims against Weinberger are citizens of Indiana.  However, such allegations cannot suffice to establish diversity jurisdiction." Notice at 2-3.  The Thomas Defendants state that Medical Assurance's allegation that it is a citizen of Alabama rather than Michigan and/or Alabama and its statement that Dr. Weinberger is a citizen of Illinois are insufficient to establish diversity jurisdiction. Notice at 2.  Because Medical Assurance is an Alabama citizen, complete diversity of citizenship is destroyed only if one of the defendants was a "citizen" of Alabama as of the filing of Medical Assurance's Complaint.  No Defendant has asserted that it is a citizen of the State of Alabama. Accordingly, there is no evidence before the Court to suggest that there is not complete diversity

5

of citizenship.  Unless and until a Defendant comes forward with such evidence, the Court will not further consider the Notice of Jurisdictional Defect.  The Court now turns to the merits of the case.

Medical Assurance contends that Magistrate Judge Rodovich's Stay Order is clearly erroneous and/or contrary to law in that the wrong abstention standard was applied in evaluating the PCF's Motion to Stay in its conclusion that the IDOI matters constitute "parallel" proceedings for purposes of abstention analysis, and in its conclusion that abstention is appropriate under the circumstances of this case.  Each of these contentions will be addressed in turn.

    A.  *Abstention Standard/Parallel Proceedings*

First, Medical Assurance asserts that the Stay Order improperly relies on and applies the deferential *Wilton* abstention standard because no "parallel" proceedings are pending in state court.  DE 94 at 2.  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), is a case that involved an insurer who sought a declaration in federal court of nonliability on an insurance policy.  In that case, the Supreme Court stated that "[w]here a district court is presented with a claim . . . it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in state court." *Id.* at 495.  In *Brillhart*, the Supreme Court ultimately determined that "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction." *Id*. at 494.  The Court further stated, "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a

state court presenting the same issues, not governed by federal law, between the same parties." *Id*. at 495.  Then, in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), the Supreme Court stated that "[t]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  The *Wilton* Court instructed district courts to "yield to the considerations of practicality and wise judicial administration."

Accordingly, the Court must first determine whether the federal and state suits are "parallel" proceedings.  The Seventh Circuit has stated that a "'suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (quoting *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1229, n.1 (7th Cir. 1979)).  Moreover, the Seventh Circuit has held that the "question is not whether the suits are formally symmetrical, but whether there is a 'substantial likelihood' that the foreign litigation 'will dispose of all claims presented in the federal case.'" *AAR Intern., Inc. v Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (internal citations omitted)).  After weighing the appropriate factors, Magistrate Judge Rodovich determined that the related State proceeding is a parallel proceeding.  This Court agrees.

First, simply because Medical Assurance is not a party to the State proceedings or that the insurance coverage determinations are not being sought in both proceedings, does not mean that the proceedings are not parallel.  Those factors are relevant, but are not determinative.  Instead, courts have held that the "existence of additional parties in one suit does not of itself destroy

7

parallelism." *Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990). *See also Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996) (an insured's lawsuit against several insurance companies in federal court and a lawsuit against Wisconsin insurance company were "parallel" proceedings because the same issues surrounded the question of insurance coverage as would be decided in the state court proceeding). Here, despite the fact that Medical Assurance is a differing party and that there are different claims, the same factual and legal issues are present. The issues in the state and federal proceedings are "substantially the same" because the claims presented rely upon the same facts to raise substantially similar legal issues.

Moreover, to determine the issue of declaratory judgment, this Court would necessarily have to consider the same factual circumstances surrounding the issue of insurance coverage as will be considered in the more than 300 underlying State proceedings in determining medical malpractice. An important issue before the Court in the federal claim will be whether the cooperation clause in the insurance contract was breached. To reach a determination on the issue of insurance coverage, the issue of "actual prejudice" must be addressed. The Southern District of Indiana has held that prejudice to the insurer's defense is not presumed by the fact of the defendant's absence. *See The Cincinnati Ins. Co. v. Irvin*, 19 F. Supp.2d 906, 915 (S.D. Ind. 1998). And the probability that the outcome of the underlying case would have been altered by the insured's presence is a question of fact. *Id.* at 916. Thus, a determination of whether Dr. Weinberger breached the cooperation clause in the insurance policy involves an examination of the factual circumstances and defenses that would have been available on behalf of Dr. Weinberger but which are not because of his absence. Accordingly, the Court is convinced that a

determination of the issue of coverage necessarily involves a consideration of the underlying merits.  After weighing the relevant factors, the Court finds that the IDOI matters are "parallel proceedings."  As such, the Court finds that Magistrate Judge Rodovich's reliance on the standards set forth in *Wilton* and *Brillhart* was not clearly erroneous or contrary to law.  Medical Assurance's objection is overruled as it relates to these issues.

      B.  *Abstention*

Having determined the proper standard to be applied in an abstention case and having determined that the IDOI matters constitute "parallel proceedings," the Court must determine whether abstention is appropriate.  Medical Assurance asserts that abstention is inappropriate because: (1) declaratory relief will clarify and settle the legal relations in issue; (2) declaratory relief will terminate and afford relief from uncertainty, insecurity, and controversy; (3) the state's interest in deciding the issues in its own courts does not support abstention because no parallel or other proceeding is pending in state court; (4) the IDOI review panel cannot more efficiently resolve the federal court coverage matter and coverage issues will not be considered in the IDOI matters; (5) the present action will not produce unnecessary "entanglement" between the federal and state court systems; (6) Medical Assurance is not using the federal declaratory action as a "procedural fencing device"; and (7) public policy favors this declaratory judgment action.  DE 94 at 11-13.

As stated above, the Court has substantial discretion in deciding whether to grant declaratory judgment.  In making that determination, courts assess such things as the nature of available defenses, whether the declaratory suit presents a question distinct from the issues presented in the state court proceeding, whether the claims of all parties in interest can be

9

satisfactorily adjudicated in the state proceeding, whether all necessary parties have been joined, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995) (stating that the district court should assess the following elements to determine whether a stay is appropriate under the Declaratory Judgment Act: (1) whether the declaratory suit presents a question distinct from the issues presented in the state court proceeding; (2) whether the parties to the two actions are identical; (3) whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative litigation; and (4) whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time). Courts have also considered such elements as whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue and whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994).

The Court agrees with Magistrate Judge Rodovich's finding that there exists significant overlap of issues in the federal proceeding and the IDOI proceedings. Magistrate Judge Rodovich stated:

> Though the district court may not need to go so far as to render a conclusive determination of liability, the court would be required to assess and predict the likely outcome of the malpractice claims and reach numerous conclusions along the way that expressly address Weinberger's relationship with the more than 300

10

> claimants . . . Likewise, for the district court to rule on the materiality of Weinberger's defense to charges of obtaining fraudulent consents or performing unnecessary surgeries would require the court to address the factual circumstances and merits of each of those patient's claims.

DE 91 at 13. Magistrate Judge Rodovich pointed to what this Court considers an even more important fact, however. Magistrate Judge Rodovich stated:

> Superficially, it may be argued that Medical Assurance's declaratory judgment claim involves only a matter of law regarding the relationship between Weinberger and his insurer. In fact, Medical Assurance's claim would require the district court to delve deeply into the factual setting and merits of the underlying malpractice claims.

*Id.* To reiterate, the Court is convinced that to determine the issues of insurance coverage and the duty to defend, the Court would have to consider the facts surrounding Dr. Weinberger's alleged disappearance and its relationship to the over 300 underlying State proceedings alleging medical malpractice. The Court further agrees with Magistrate Judge Rodovich's determination that, "under *Wilton*, this degree of overlap between the state and federal courts warrants a stay of the declaratory judgment claim." *Id.* The Court finds that this factor – the overlap between the state and federal proceedings – deserves substantial weight. Due to the volume and number of claims and the extent of overlap of issues, the Court finds that a stay is the most appropriate course of action.[3]

---

[3]As an additional matter, at the oral argument on June 6, 2008, the Plaintiff raised the an issue regarding the fact that many of the underlying claims are before the medical review panel rather than before an Indiana state court. The Court notes that the Plaintiff did not raise this issue in its objection and, therefore, this objection is waived. *Hamilton v. American Corrective Counseling Services, Inc.*, 2007 WL 1121307, *1 (N.D. Ind. April 13, 2007) (citations omitted). To be clear, however, it matters not to this Court's determination that there exists a possibility that many of the underlying claims are before the medical review panel. The claimants are required procedurally to first file their claims before the medical review board. IND. CODE 34-18 et. seq. This does not preclude abstention by this Court in this case.

C. *Indemnification*

Finally, Plaintiff asserts that if the Court concludes that Medical Assurance owes no duty to defend the ongoing IDOI matters, the Court may rule that no duty to indemnify exists. DE 94 at 21. Plaintiff states, "[i]n the Stay Order, the Magistrate Judge states that Medical Assurance 'glosses over [the] distinction' between the 'ripeness' of a duty to indemnify claim and that of a duty to defend claim, before resolution of the underlying litigation." *Id.* (quoting Stay Order at 6). Plaintiff contends that, unlike cases in which the duty to indemnify was not ripe for adjudication until the underlying matter was resolved, it seeks a judicial determination of its duty to defend the ongoing litigation, prior to resolution of the underlying IDOI matters. DE 94 at 21. Medical Assurance cites cases that stand for the proposition that the duty to defend is broader than the duty to indemnify and that the duty to defend is a question that is ripe for declaratory judgment. The Court, however, finds that the issue of indemnification is not ripe for ruling. There has been no finding of liability in the underlying proceedings. As such, it would exceed this Court's jurisdiction to render a declaration regarding indemnity. Moreover, the Court finds that Magistrate Judge Rodovich correctly applied *Lear Corp. v. Johnson Electric Holdings Limited*, 353 F.3d 580, 583 (7th Cir. 2003). The Court thus adopts Magistrate Judge Rodovich's opinion as it relates to the duty to indemnify and overrules Medical Assurance's objection.

IV. Conclusion

A review of Magistrate Judge Rodovich's Stay Order and the objections to the Stay Order convinces the Court that Magistrate Judge Rodovich's Stay Order [DE 91] should be, and hereby is, **ADOPTED** in its entirety. Accordingly, the Motion to Stay [DE 72] filed by Defendant

James Atterholt, Commissioner of the IDOI and Administrator of the Indiana PCF, is **GRANTED**. This case is stayed pending resolution of the underlying state claims and until further order of the Court.

**SO ORDERED ON JULY 11, 2008.**

                                  s/ Allen Sharp
                                  **ALLEN SHARP, JUDGE**
                                  **UNITED STATES DISTRICT COURT**