UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

THE MEDICAL ASSURANCE COMPANY,    )
INC.,                             )
                                  )
              Plaintiff           )
                                  )
         v.                       )    Case No. 4:06 cv 117
                                  )
MARK S. WEINBERGER, M.D.,         )
et al.,                           )
                                  )
              Defendants          )

## OPINION AND ORDER

This matter is before the court on the Motion to Amend
Answer to Amended Complaint and to Assert Counterclaim [DE 216]
filed by the Verhoeve defendants on February 25, 2011; the Motion
to Strike Untimely Answer [DE 232] filed by the plaintiff,
Medical Assurance Company, Inc., on March 10, 2011; the Motion
for Leave to Serve in Excess of Twenty-Five Interrogatories [DE
234] filed by the Indiana Patient's Compensation Fund on March
15, 2011; the Motion to Compel Answers to Discovery [DE 238]
filed by PCF on March 23, 2011; and the Alternative Motion to
Reopen Written Discovery [DE 240] filed by PCF on March 23, 2011.

For the following reasons, the Motion to Amend Answer to
Amended Complaint and to Assert Counterclaim [DE 216] is GRANTED,
the Motion to Strike Untimely Answer [DE 232] is DENIED, the
Motion for Leave to Serve in Excess of Twenty-Five Interrogato-
ries [DE 234] is DENIED, the Motion to Compel Answers to Discov-

ery [DE 238] is DENIED, and the Alternative Motion to Reopen
Written Discovery [DE 240] is GRANTED.

<u>Background</u>

This matter arises from a contract dispute concerning
liability for approximately 350 pending medical malpractice
claims against Dr. Mark S. Weinberger and the business entities
he owned (the Weinberger defendants).  This case originally was
filed in 2007 and was subject to a stay until July 13, 2010.  At
the time the case was filed, Weinberger could not be located and
recently was arrested on federal criminal charges.  On appeal,
the Seventh Circuit lifted the stay, and the case now is moving
toward final disposition.

Medical Assurance filed an amended complaint on December 21,
2006. The Verhoeve defendants filed a motion for leave to amend
their answer on February 25, 2011, because of the recent develop-
ments in the case, including Weinberger's arrest and the lifting
of the order to stay the proceedings.

The Weinberger defendants also were served with Medical
Assurance's amended complaint on January 18, 2011, rendering
their responsive pleading due on February 10, 2011.  The Wein-
berger defendants' attorney withdrew days before the responsive
pleading was due without filing a response.  The Weinberger
defendants retained a new attorney, John J. Morse, on February

2

18, 2011.  Upon learning that an answer had not been filed, the
Weinberger defendants moved for an extension of time to April 30,
2011, to file an answer.  In an effort to expedite the case, the
court denied the extension.  The Weinberger defendants filed
their answer on March 7, 2011, and Medical Assurance now moves to
strike it as untimely.

Although discovery closed on December 31, 2010, the parties
have continued to conduct discovery.  At the January 7, 2011
status conference, the court noted that new discovery deadlines
would be set at the May 5, 2011, status conference.  Stephen W.
Robertson, Commissioner of the Indiana Department of Insurance
and Administrator of the Indiana Patient's Compensation Fund
("PCF"), proceeded to serve Medical Assurance with its second set
of interrogatories, which totaled 33. PCF now moves to re-open
discovery and for leave to serve in excess of 25 interrogatories.
Medical Assurance opposes PCF's motions and has not responded to
PCF's second set of interrogatories, so PCF filed a motion to
compel responses to its second set of interrogatories.

## Discussion

The Verhoeve defendants first request leave to file an
amended answer.  Federal Rule of Civil Procedure 15(a) provides
that "a party may amend the party's pleading only by leave of
court or by written consent of the adverse party; and leave shall

be freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d. 222 (1962). The Supreme Court held that permission to amend shall be granted absent any evidence of bad faith, dilatory motive, undue delay, or unfair prejudice to the opposing party. Foman, 371 U.S. at 182, 83 S.Ct. at 230. See also Jackson v. Rockford Housing Authority, 213 F.3d 389, 393 (7th Cir. 2000) ("The general rule that amendment is allowed absent undue surprise or prejudice to the plaintiff is widely adhered to by our sister courts of appeal."). The court also may deny leave because the amendment is futile. Bethany Pharmacal Company, Inc. v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001) (citing Foman, 371 U.S. at 182, 83 S.Ct at 230). Rule 15(a) is highly discretionary. The decision of the court to deny leave to amend only violates this abuse of discretion standard "if 'no reasonable person could agree with the decision.'" Aldridge v. Forest River, Inc., 635 F.3d 870, 875 (7th Cir. 2011); Winters v. Fru-Con, Inc., 498 F.3d 734, 741 (7th Cir. 2007) (quoting Butts v. Aurora Health Care, Inc., 387 F.3d 921, 925 (7th Cir. 2004)); Ajayi v. Aramark Business Services, 336 F.3d 520, 530 (7th Cir. 2003).

PCF opposes the Verhoeve defendants' motion to amend on three grounds. First, he argues that allowing the amendment would unfairly prejudice PCF because the Verhoeve defendants'

4

proposed counterclaim is premised upon confidential statements made during settlement negotiations. PCF is correct that statements made during settlement negotiations are confidential. Federal Rules of Evidence 408(a)(1) & (2); Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 517 (7th Cir. 2007) (citing In re Young, 253 F.3d 926 (7th Cir. 2001)). There is a strong public policy in favor of promoting settlement. Bergstrom, Inc. v. Glacier Bay, Inc., 2010 WL 257253, *2 (N.D. Ill. Jan. 22, 2010). "Without confidentiality, the discussions and exchange of information necessary to the settlement process may not occur." Bergstrom, 2010 WL 257253, at *2.

However, Rule 408 is not an absolute ban on the admissibility of statements made during settlement negotiations. Rule 408; 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure §5308 (1st 2010); Broadcort Capital Corp. v. Summa Medical Corp., 972 F.2d 1183, 1194 (10th Cir. 1992). Confidentiality does not extend to information attained from sources independent of the settlement negotiations or to statements offered for a purpose other than to "prove liability for or invalidity of the claim or its amount". See Rule 408; Grove Fresh Distributors, Inc. v. John Labatt Ltd., 888 F.Supp. 1427, 1441-42 (N.D. Ill. 1995) (explaining that court cannot prevent disclosure of information gained through means independent of the settlement

conference); Trans Union Credit Information Co. v. Associated Credit Services, 805 F.2d 188, 192 (6th Cir. 1986)("Rule 408 excludes only evidence of conduct and statements made solely as part of the settlement negotiations, and not statements and conduct made at the meeting which are unrelated to such compromise negotiations."); 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure §5308 (1st 2010). Nor does Rule 408 prevent disclosure of evidence discussed in settlement negotiations during discovery. White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 368 (N.D. Ill. 2004)(explaining that Rule 408 only applies to the admissibility of evidence at trial and does not protect evidence from discovery). Rule 408 is limited to prohibiting disclosure at trial of statements made during settlement negotiations introduced for the purpose of proving liability. White, 203 F.R.D. at 368.

As an initial matter, the Verhoeve defendants are requesting to amend their responsive pleading, not to introduce such statements at trial, rendering Rule 408 inapplicable. Moreover, the Verhoeve defendants' amended answer does not seek to introduce statements made during settlement negotiations, nor is this the appropriate time to determine the evidentiary basis supporting the Verhoeve defendants' claim. If the Verhoeve defendants do

not have admissible evidence to support their claim, this is more appropriately contested on a motion for summary judgment.

Furthermore, PCF must do more than make unsupported conclusory statements alleging it will suffer prejudice.  See J.P Morgan Chase Bank, N.A. v. Drywall Service & Supply Co., Inc., 265 F.R.D. 341, 352 (N.D. Ind. 2010)(explaining that a finding of unfair prejudice cannot be supported by conclusory statements). PCF has failed to show that the basis of the Verhoeve defendants' claim is predicated upon inadmissible information or that the Verhoeve defendants could not have obtained the information from a source independent from the settlement negotiations.  Absent a more specific argument, PCF has failed to show that the proposed amendment is improper and that permitting it will cause PCF to suffer prejudice.

Second, PCF alleges that the Verhoeve defendants' proposed claim is not ripe.  PCF argues that because the court has not determined the plaintiff's duty to indemnify, the controversy regarding the policy limits is not ripe for determination.  PCF cites to several cases explaining that declaratory judgments concerning indemnification are not ripe for determination.  The Verhoeve defendants counter that they do seek a declaratory judgment directing Medical Assurance to indemnify the Weinberger defendants in the underlying malpractice actions.  Rather, they

7

argue that they are requesting a declaratory judgment explaining the limits of the policy.

The distinction between a declaration of indemnity and a declaration of a policy's limits, though fine, is determinable. A declaration regarding an insurer's duty to indemnify before a liability determination generally is considered not ripe, depriving the court of subject matter jurisdiction. Lear Corporation v. Johnson Electric Holdings Limited, 353 F.3d 580, 583 (7th Cir. 2003) (quoting Nationwide Insurance Company v. Zavalis, 52 F.3d 689, 693 (7th Cir. 1995)("The duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."). In contrast, courts generally have found jurisdiction over declaratory judgments regarding "the validity of a policy," and "the coverage of a liability policy." 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure §2760 (3d 1998); City of Chicago v. Arvin-meritor, Inc., 2006 WL 3431910, *2 (N.D. Ill. Nov. 28, 2006) ("Furthermore, in the insurance context, claims over defense obligations are generally always regarded as ripe for adjudication during pending primary lawsuits, even when it is unclear whether the particular insurance policy contains a duty to defend.").

The ripeness necessary for jurisdictional purposes requires a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgement." Nucor Corporation v. Aceros Y Maquilas De Occidente, S.A. DE C.V., 28 F.3d 572, 577 (7th Cir. 1994) (quoting Maryland Casualty Company v. Pacific Coal & Oil Company, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). See generally, Freedom From Religion Foundation, Inc. v. Obama, ___ F.3d ___, 2011 WL 1405156, *1-2 (7th Cir. 2011) (explaining that a party must suffer an injury to his own rights to have standing).

The issue raised by the Verhoeve defendants' proposed declaratory count is not so narrowly focused upon the question of indemnity as to remove it from the court's jurisdiction. Specifically, the Verhoeve defendants seek a declaratory judgment requiring the court to interpret the insurance policies which the Weinberger defendants held to determine whether the aggregate limits of the policies should be "stacked".[1] See e.g., McGrath v. Godshalk, 2007 WL 2746865, *4-5 (N.D. Ind. Sept. 18, 2007) (finding that a complaint seeking declaratory judgment on the issue of whether separate acts of negligence constitute a sepa-

---

[1] Stacking is "[t]he process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate." Black's Law Dictionary (9th ed. 2009).

rate occurrence under the terms of the insurance policy was ripe
for determination); Nucor, 28 F.3d at 577-579 (explaining whether
claims are separate occurrences under the policy).  See also
Grinenell Select Ins. Co. v. Baker, 362 F.3d 1005, 1006-1008 (7th
Cir. 2004)(interpreting anti-stacking clause in contract).

PCF essentially argues that because a decision on this
question could lead to a requirement of indemnification, it is
purely a question of indemnification and not ripe.  However, the
Verhoeve defendants' allegations reach beyond the basic question
of indemnity.  The proposed counterclaim requests an interpreta-
tion of the contract regarding the aggregate limits and stacking
of the policies and does not require the court to determine if
Medical Asssurance will have to indemnify the Weinberger defen-
dants.  See Employers Insurance of Wausau v. Burlington Northern
and Santa Fe Railway Company, 336 F.Supp.2d 637, 641 (E.D. Tex.
2003)(holding that declaratory judgment claim requiring the court
to determine if policy limits could be stacked was ripe even
though the underlying action was ongoing).  Therefore, the
Verhoeve defendants' proposed counterclaim states a justiciable
claim.

PCF also opposes the Verhoeve defendants' motion to amend,
arguing that their proposed claim amounts to a request for an
advisory opinion because there is no controversy of sufficient

immediacy to warrant issuance of a declaratory judgment.  Federal courts are prohibited from issuing advisory opinions.  Sierra Club v. Morton, 405 U.S. 727, 732 n.3, 92 S.Ct. 1362, 31 L.Ed.2d 636 (1972).  "The term 'advisory opinion' is often just a conclusion; it is what you call a decision that does not resolve an actual case or controversy."  People of State of Illinois ex rel. Barra v. Archer Daniels Midland Co., 704 F.2d 935, 941 (7th Cir. 1983).  Under Article III, the parties must present an actual "case or controversy".  Environmental Barrier Co., LLC v. Slurry Systems, Inc., 540 F.3d 598, 605 (7th Cir. 2008).  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . .  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

The Seventh Circuit has recognized that a controversy, sufficient to give rise to subject matter jurisdiction, may be present in an indemnification action despite the contingency of the underlying claims.  Bankers Trust Co. v. Old Republicans Ins. Co., 959 F.2d 677, 680 (7th Cir. 1992).  In reaching this conclu-

sion, the Seventh Circuit considered the "likelihood of liability in the underlying litigation, the amount of possible damages, and the ability to pay those damages if the party was found liable." Casual Dining Development, Inc. v. QFA Royalties, LLC, 2008 WL 4186692, *3 (E.D. Wis. Sept. 5, 2008)(citing Bankers, 959 F.2d at 679-683). The court explained that "Article III requires only a probabilistic injury", and the extent of a suitable injury is a matter of degree. Bankers, 959 F.2d at 681. When there is a sufficient likelihood that the insurer will be liable for damages and no suggestion that the recovery sought is grossly inflated, it is within the district court's discretion to accelerate consideration of a suit for indemnification. Bankers, 959 F.2d at 681; Wooten v. Loshbough, 951 F.2d 768, 769 (7th Cir. 1991).

Although the Verhoeve defendants do not propose to add a counterclaim for indemnification, the same reasoning is applicable because the extent of coverage is relevant to determining the parties' liability for the underlying claims that remain pending in state court. The counterclaim proposed by the Verhoeve defendants presents more than an academic argument and a request for an advisory opinion. PCF will be liable for any settlement or judgment not paid by the Weinberger defendants or their insurer within 90 days from when it is entered. See Ind. Code §34-18-15-4 ("If a health care provider or the health care provider's

surety or liability insurance carrier fails to pay any agreed settlement or final judgment within ninety (90) days, the agreed settlement or final judgment shall be paid from the patient's compensation fund").

It is the plaintiff's position that the aggregate limits of the policy are $5 million, while PCF argues that the policies should be stacked to provide $15 million of coverage. There are currently 350 malpractice claims pending against the Weinberger defendants in state court. One already has been resolved for $300,000, others are set for trial in the coming months, and others are on appeal from the medical review board who found against the Weinberger defendants. In light of the myriad of suits pending in state court, many of which already have been resolved against the Weinberger defendants by the medical review board, there is a probability that the total liability will exceed $5 million and that the court will be required to interpret the policy to determine the aggregate limits. PCF does not suggest that the likelihood of recovery exceeding $5 million is grossly inflated, nor do the facts suggest the same.

The imminence of the final determination of the nearly 350 underlying malpractice claims, many of which will be decided in the coming months, renders the counterclaim necessary to prevent long delays and future claims to determine the limits of the

applicable policies.  The court's determination on this matter does not rest on hypothetical facts.  Rather, the court is being asked to interpret the insurance policies so that the parties can understand their rights thereunder.  Given the immediacy of the resolution of the underlying malpractice claims and the nature of the request, the court finds that the Verhoeve defendants are not seeking an advisory opinion.  Rather, they request a determination explaining the rights and liabilities under the policy so that, upon resolution, the succeeding malpractice litigants can collect their judgments from the appropriate source.

For the foregoing reasons, the court finds that the proposed amended counterclaim is appropriate and ripe for determination. The court GRANTS the Verhoeve defendants' Motion to Amend Answer to Amended Complaint and to Assert Counterclaim [DE 216].

The court next turns to the plaintiff's Motion to Strike Untimely Answer [DE 232].  Federal Rule of Civil Procedure 12(f) states that "the court may strike from a pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Motions to strike generally are disfavored, although they may be granted if they remove unnecessary clutter from a case and expedite matters, rather than delay them.  Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989); Shirley v. Jed Capital, LLC., 2010 WL 2721855, *5 (N.D. Ill. July

8, 2010); Doe v. Brimfield Grade School, 552 F.Supp.2d 816, 825 (C.D. Ill. 2008). The decision whether to strike material is within the discretion of the court. Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 665 (7th Cir. 1992). "Motions to strike under Federal Rule 12(f) are not favored [ ] and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial." Tektel, Inc. v. Maier, 813 F.Supp. 1331, 1334 (N.D. Ill. 1992).

Rule 12(f) does not vest the court with the power to strike an answer in its entirety. Agstar Financial Services, PCA v. Union Go-Dairy, LLC, 2011 WL 772754, *1 (S.D. Ind. Feb. 25, 2011). "The Court's authority to strike an Answer rests not on a statute or rule, but on 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Agstar, 2011 WL 772754 at *1 (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Although the expeditious disposition of the case is an important consideration, the Seventh Circuit favors a policy of allowing cases to proceed on the merits. Tektel, 813 F.Supp. at 1334. It is within the trial court's discretion to consider untimely pleadings when good cause is shown and excusable neglect found to be the cause for the delay. Federal Rule of Civil Procedure 6(b). The factors the court must

consider are "the danger of prejudice to the [opposing party], the length of the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'Ship., 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In an effort to expedite resolution of this matter, the court denied the Weinberger defendants an extension of time to April 30, 2011 to file a response.  However, the Weinberger defendants immediately filed an answer on March 7, 2011, and assert that the delay in filing an answer was excusable neglect. The Weinberger defendants' attorney represents that he filed the answer within 14 days of learning of the previous attorney's failure to do so.  Given the prolonged stay, complexity of this matter, extended duration of this suit, extensive docket report, and change of attorneys, it is understandable that the failure was an oversight.

The Weinberger defendants were served with Medical Assurance's Second Amended Complaint on January 18, 2011, rendering their responsive pleading due on or before February 10, 2011. Around this time, but before the answer was due, the Weinberger defendants' attorney withdrew.  Their new attorney entered an appearance on February 18, 2011, and represents that he devoted a

great deal of time familiarizing himself with the posture of this case.  He was quick to remedy the oversight and filed Weinberger defendants' answer on March 7, 2011.  Medical Assurance has not shown how it would suffer prejudice from the delay, particularly in light of the recent advancements in the case, including the arrest of Weinberger and lifting of the stay, which may have spurred the Weinberger defendants to amend any responsive pleading that had been timely filed.  Therefore, the court finds that the delay was due to excusable neglect and will consider the answer timely filed.  Medical Assurance's Motion to Strike Untimely Answer [DE 232] is accordingly DENIED.

Because PCF filed its motion for leave to serve in excess of 25 interrogatories after the discovery deadline, it is necessary for the court first to address PCF's motion to re-open discovery. Federal Rule of Civil Procedure 16(b) provides that a schedule shall not be modified except upon a showing of good cause and by leave of the court. Campania Management Co., Inc. v. Rooks, Pitts & Poust, 290 F.3d 843, 851 (7th Cir. 2002); Briesacher v. AMG Resources, Inc., 2005 WL 2105908, *2 (N.D. Ind. Aug. 31, 2005). Good cause sufficient for altering discovery deadlines is demonstrated when a party shows that, "despite their diligence, the established timetable could not be met." Tschantz v. McCann, 160 F.R.D. 568, 571 (N.D. Ind. 1995). Generally, the discovery

deadline specifies the date on which all discovery must be
completed, therefore, any document requests must be served at
least 30 days prior to the discovery deadline. See Shadle v.
First Financial Bank, N.A, 2009 WL 3787006, *1 (N.D. Ind. Nov.
10, 2009) (discussing Rules 16, 33, and 34, and Local Rule
16.1(d)(5)).  However, courts have allowed discovery requests
that would require responses after the close of discovery in
certain circumstances. See International Truck and Engine Corp.
v. Caterpillar, Inc., 2004 WL 3217760, *1-2 (N.D. Ind. May 26,
2004) (allowing supplemental responses to interrogatories served
two days before the fact discovery deadline because the late
supplementation was harmless, trial was several months away, and
any prejudice suffered by the defendant could be easily remedied
by a motion to reopen fact discovery); Kedzior v. Talman Home
Federal Savings & Loan Association of Illinois, 1990 WL 70855, *5
(N.D. Ill. May 10, 1990) (granting plaintiff's motion to compel
documents "for all job openings since 1986" when the defendant
revealed a company policy five days before the discovery deadline
that had excluded certain jobs from its previous discovery
responses).

In light of Weinberger's recent return to the United States
and the Seventh Circuit's recent opinion reversing the court's
order on the motion to stay, the court finds that there is good

cause to re-open discovery.  The parties contemplated setting new discovery deadlines at the January 7, 2011 status conference, and as a result, the court set a status conference for May 5, 2011, indicating that discovery deadlines would be determined at that time.  The parties have continued to conduct discovery and have depositions scheduled for future dates.  Due to the recent developments in this case, the court finds good cause to re-open written discovery and GRANTS PCF's Motion to Reopen Written Discovery [DE 240].  Discovery deadlines have been set at the May 5, 2011 status conference per the January 7, 2011 docket entry.

Because the court has re-opened written discovery, the court will address PCF's motion for leave to serve in excess of 25 interrogatories on Medical Assurance.  The use of interrogatories is governed by Federal Rule of Civil Procedure 33(a)(1) which states that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)."  Thus, a party may petition the court for an order allowing it to serve additional interrogatories.

Federal Rule of Civil Procedure 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery other-

wise allowed by these rules or by local rules
if it determines that: (i) the discovery
sought is unreasonably cumulative or duplica-
tive, or can be obtained from some other
source that is more convenient, less burden-
some, or less expensive; (ii) the party seek-
ing discovery has had ample opportunity to
obtain the information by discovery in the
action; or (iii) the burden or expense of the
proposed discovery outweighs its likely bene-
fit, considering the needs of the case, the
amount in controversy, the parties' re-
sources, the importance of the issues at
stake in the action, and the importance of
the discovery in resolving the issues.

This limitation is not meant "to prevent needed discovery, but to

provide some judicial scrutiny before parties make potentially

excessive use of this discovery device." 8A Wright & Miller,

Federal Practice and Procedure §2168.1, at 262 (2d ed. 1994)

(quoting Advisory Committee Notes, 146 F.R.D. 401, 676).

The court approaches the issue of whether a party may serve

more than 25 interrogatories on a case-by-case basis. Duncan v.

Paragon Publishing, Inc., 204 F.R.D. 127, 128 (S.D. Ind. 2001)

(citation omitted). Some courts require a party to exhaust

available discovery prior to seeking leave to serve additional

discovery. See Duncan, 204 F.R.D. at 128 (denying a motion for

supplemental discovery where party sought to serve additional

interrogatories without first exhausting the 25 granted under

Rule 33). Additionally, courts require a party seeking to serve

more than 25 interrogatories to make a "particularized showing"

of necessity.  Duncan, 204 F.R.D. at 128 (citing Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota, 187 F.R.D. 578, 586 (D. Minn. 1999)).

In Duncan, the plaintiffs sought leave to serve 99 interrogatories on the defendants, claiming the information sought could not be obtained from a more convenient source, the interrogatories were not unreasonably cumulative or duplicative, and the interrogatories would not serve as an annoyance or cause significant expense to the defendants. Duncan, 204 F.R.D. at 128. The defendants objected to the request, arguing that the plaintiffs sought to serve more than 178 interrogatories in total, the interrogatories were burdensome and oppressive, and the plaintiffs failed to make a particularized showing of need for the information. The district court for the Southern District of Indiana, agreeing with the defendants, denied plaintiffs' motion, finding that the plaintiffs failed to make a particularized showing of necessity under the circumstances.  The court explained that the information was available from other sources and was cumulative because the plaintiff intended to depose the party to whom the interrogatories were addressed.  Duncan, 204 F.R.D. at 129.

PCF must do more than state that the proffered interrogatories are more convenient, less burdensome, and not duplicative.

PCF must demonstrate a particularized need.  Duncan, 204 F.R.D. at 128.  In its motion, PCF explained that the second set of interrogatories is not cumulative because it directly pertains to statements Walton made in his affidavit filed in support of Medical Assurance's motion for summary judgment and issues raised in Medical Assurance's motion for summary judgment, which was not pending at the time it served its first set of interrogatories. PCF represents that it was unaware of the theories Medical Assurance was proceeding under, and now requires more information to form a response.

However, Medical Assurance has referred to specific inter-rogatories to show redundancy between the first and second set of interrogatories.  For example, Interrogatories 7 and 8 of the first set of interrogatories asked about the prejudice Medical Assurance suffered from Weinberger and the Weinberger entities' failure to cooperate.  Similarly, Interrogatories 1 and 2 of the second set inquired into each instance where Weinberger expressly deceived or misled Medical Assurance with regard to the medical malpractice claims.  Interrogatories 18 and 19 of the second set asked Medical Assurance to identify every action it took to notify Weinberger and his business entities of their duty to cooperate.  Similarly, in its first set of interrogatories, PCF asked Medical Assurance of any efforts it took to communicate

with Weinberger regarding claims filed by the medical malpractice plaintiffs, efforts it took to locate Weinberger, and how Weinberger and his business entities received notice of the malpractice claims.  Although the interrogatories are not phrased the same, the second set of interrogatories essentially seeks the same information as requested in the first set.  Despite Medical Assurance pointing out the duplicity between the two sets of interrogatories, PCF failed to submit more than a boilerplate reply arguing that the information sought was not redundant. PCF did not go through the specific interrogatories to explain how the information sought was different from the first set of interrogatories.  Furthermore, PCF intends to take the deposition of a representative for Medical Assurance further rendering the interrogatories unnecessary and cumulative.  Absent more specific reasons, PCF falls short of establishing a particularized need to submit in excess of 25 interrogatories and its motion for leave to submit in excess of 25 interrogatories is DENIED.

PCF also requests the court to compel Medical Assurance to provide responses to its Second Set of Interrogatories.  However, "[t]he Court will not compel a party to answer any interrogatories served in violation of [Rule 33(a)]."  Rule 33(a); Kaprelian v. Bowers, 2010 WL 2197778, * 3 (E.D. Wis. 2010) (denying motion to compel because the plaintiff's interrogatories

exceeded the limit set forth in Rule 33(a)). Because the court denied PCF leave to serve in excess of 25 interrogatories on Medical Assurance, the court will not compel Medical Assurance to respond. PCF's motion to compel [DE 238] is accordingly DENIED.

_____

For the foregoing, the Motion to Amend Answer to Amended Complaint and to Assert Counterclaim [DE 216] filed by the Verhoeve defendants on February 25, 2011, is GRANTED; the Motion to Strike Untimely Answer [DE 232] filed by the plaintiff, Medical Assurance Company, Inc., on March 10, 2011, is DENIED; the Motion for Leave to Serve in Excess of Twenty-Five Interrogatories [DE 234] filed by the Indiana Patient's Compensation Fund on March 15, 2011, is DENIED; the Motion to Compel Answers to Discovery [DE 238] filed by PCF on March 23, 2011, is DENIED; and the Alternative Motion to Reopen Written Discovery [DE 240] filed by PCF on March 23, 2011, is GRANTED.

ENTERED this 26th day of May, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge