UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

THE MEDICAL ASSURANCE COMPANY,    )
INC.,                             )
                                  )
                Plaintiff         )
                                  )
        v.                        )    Case No. 4:06 cv 117
                                  )
MARK S. WEINBERGER, M.D.,         )
et al.,                           )
                                  )
                Defendants        )

OPINION AND ORDER

This matter is before the court on the Motion for Discovery
Sanctions of the Plaintiff, the Medical Assurance Company, Inc.,
as to the Weinberger Defendants [DE 246] filed on April 4, 2011;
the Motion for Protective Order [DE 248] filed by Medical Assur-
ance on April 7, 2011; and the Motion to Compel the PCF's Answers
to Interrogatories [DE 261] filed by Medical Assurance on April
13, 2011.  For the following reasons, the Motion for Discovery
Sanctions of the Plaintiff [DE 246] is **DENIED,** the Motion for
Protective Order [DE 248] is **GRANTED IN PART** and **DENIED IN PART,**
and the Motion to Compel the PCF's Answers to Interrogatories [DE
261] is **DENIED.**

Background

This matter arises from an insurance coverage dispute con-
cerning liability for approximately 350 pending medical malprac-
tice claims against Dr. Mark S. Weinberger and his business

entities (the Weinberger defendants).  This case originally was filed in 2006, and was subject to stay until July 13, 2010.  On appeal, the Seventh Circuit lifted the stay, and the case now is moving toward final disposition.

Discovery was set to close on December 31, 2010.  However, the court noted in the January 7, 2011, docket entry that new discovery dates would be set at the May 5, 2011, status conference and ordered discovery re-opened.  Throughout the course of the litigation, the parties have struggled to resolve discovery disputes independently.

After the stay was lifted, Medical Assurance served interrogatories upon the Weinberger defendants.  The Weinberger defendants' responses were due on March 2, 2011, and on this day, the attorney for the Weinberger defendants, John Morse, moved for and was denied an extension of time to respond.  Medical Assurance contacted Morse on multiple occasions to inquire when it could expect responses to the interrogatories.  Medical Assurance twice agreed to extend the time for the Weinberger defendants to respond.  The responses ultimately were due on March 22, 2011.

 Morse represents that upon having his request for extension of time denied, he consulted with Weinberger's criminal defense attorney to prepare responses to the interrogatories.  Weinberger and his business entities cited the Fifth Amendment and declined

to answer several of the interrogatories.  Although the Weinberger defendants responded to the interrogatories, Medical Assurance now moves the court to sanction the Weinberger defendants for failing to respond timely and completely to the discovery request.  Morse represents that the Weinberger defendants are preparing supplemental responses, and Weinberger's business entities will not refuse to respond on Fifth Amendment grounds.

Medical Assurance also moves to compel Stephen W. Robertson, Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient's Compensation Fund (PCF), to respond to the interrogatories it served upon PCF.  The interrogatories question the factual basis for PCF's claims and defenses and inquire about PCF's position on certain issues.  PCF objects, arguing that the interrogatories are contention interrogatories and that compelling responses at this point of the litigation would be premature.

PCF served its own discovery upon Medical Assurance, including deposition notices explaining the subjects it intends to explore at the deposition.  Among those deposition subjects are the facts relating to the underlying medical malpractice claims. Medical Assurance argues that the underlying malpractice claims are irrelevant to the present matter and exceed the scope of its pending motion for summary judgment to which discovery must be

limited.  Medical Assurance requests a protective order, striking certain subjects from PCF's deposition notice.  The court will address these disputes in turn.

## Discussion

The plaintiff, Medical Assurance, first requests sanctions against the Weinberger defendants for failing to  respond to its written discovery requests.  Although the Weinberger defendants submitted a response to Medical Assurance's interrogatories, Medical Assurance asserts that the responses were incomplete and evasive and should be regarded as a failure to respond.  *See* Federal Rule of Civil Procedure 37(a)(4) (stating that evasive responses are treated as a failure to respond).

A response is deemed incomplete or evasive when the party does not fully respond with the information presently available that is not subject to a privilege.  *See **Airtex Corp. v. Shelley Radiant Ceiling Co.***, 536 F.2d 145, 155 (7th Cir. 1976); ***Watkinson v. Great Atlantic & Pacific Tea Co.***, 38 Fed. R.Serv.2d 1310 (E.D. Pa. 1984).  *See generally **Alliance to End Repression v. Rochford***, 75 F.R.D. 438, 440 (N.D. Ill. 1976) (explaining that the defendant's interrogatory answers that failed to discuss defendant's personal knowledge were incomplete).  Rule 37(d) addresses a party's remedies when another party fails to respond to its request for interrogatories:

(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.

    (1) In General.

        (A) Motion; Grounds for Sanctions. The court where the action is pending may, on motion, order sanctions if:

        \* \* \*

        (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

        \* \* \*

    (3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Under Rule 37(b)(2)(A), the available sanctions include:

    (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

5

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party.

Sanctions generally are imposed only where the party unjustifiably refuses to comply with discovery. ***Alliance to End Repression***, 75 F.R.D. at 440 (explaining that the failure to comply must be willful); Rule 37 Advisory Committee Notes. The most severe sanctions, including dismissal, should be issued only when the failure to comply was the result of willfulness or bad faith, the deterrent value of Rule 37 cannot be achieved by the use of less drastic sanctions, or the failure to comply has prejudiced the opposing party's preparation for trial. *See* ***Metropolitan Life Insurance Company v. Cammon,*** 1989 WL 153558, *5 (N.D. Ill. 1989). *See also* ***National Hockey League v. Metro Hockey Club, Inc.***, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (holding that 17 months of unanswered interrogatories combined with flagrant bad faith and callous disregard was ample justification to dismiss as a necessary deterrent).

Nonetheless, "the Seventh Circuit has cautioned that a dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations." *Govas v. Chalmers,* 1989 WL 157506, *3 (N.D. Ill. 1989); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992)(referring to dismissal as a "drastic sanction" and noting that "we have recommended that courts consider lesser sanctions before imposing default judgments."); *In re Thomas Consolidated Industries, Inc.*, 456 F.3d 719, 724-25 (7th Cir. 2006); *Greviskes v. University Research Association, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) (imposing sanction of dismissal when plaintiff hid behind "a cloak of further fraud and deceit."). *See also Bolanowski v. GMRI, Inc.*, 178 Fed.Appx. 579, 581 (7th Cir. 2006).

The Weinberger defendants admit that their responses to Medical Assurance's interrogatories were not complete and explain that this was due in part to the need for an extension of time to comply fully. The Weinberger defendants' attorney, John Morse, represents that after he requested and was denied an extension of time to respond he consulted with Weinberger's criminal defense attorney and prepared the discovery responses asserting Fifth Amendment rights. Morse contests that the court never explicitly stated that the Weinberger defendants could not assert the Fifth Amendment in response to discovery requests. The Weinberger

defendants currently are preparing supplemental responses and do not intend to raise the Fifth Amendment as an objection to the discovery requests.

It appears that Morse attempted to circumvent the order denying him an extension of time to respond to discovery. He took it upon himself to extend the discovery deadline by raising clearly unfounded objections to the interrogatories with the intent to supplement his responses at a later date. It is well established that the Fifth Amendment right against self incrimination is a right reserved to individuals and cannot be raised by corporate entities. *Braswell v. United States*, 487 U.S. 99, 105-06, 108-09, 108 S.Ct. 2284, 2289, 101 L.Ed.2d 98 (1988) (explaining that a corporate officer could not assert the Fifth Amendment right against self incrimination in response to a federal grand jury subpoena); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (explaining that a partner in a partnership could not refuse to produce records by asserting the Fifth Amendment); *Wachovia Securities, LLC v. Neuhauser*, 2011 WL 1465653, *3 (N.D. Ill. 2001) ("[T]he act of production doctrine does not extend to a corporate custodian, because the custodian's 'act of production is not deemed a personal act, but rather an act of the corporation.'"); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 175 (N.D. Ill. 1993) ("[C]orporations do not possess the Fifth

Amendment privilege against self-incrimination and the privilege does not extend to employees").  Although the rules contemplate allowing a party to supplement his responses, he must respond completely to the discovery requests within the time set by the court or federal rules with the information then available. Morse does not assert that the information sought was not available at the time he prepared his responses, so he was required to comply within the court ordered deadline.

However, the remedy Medical Assurance seeks is a harsh remedy that can be applied only in extreme circumstances.  Medical Assurance did not seek to compel responses to the interrogatories, but instead, requested the most severe sanction available.  Although the Weinberger defendants repeatedly have taken steps to prolong resolution of this matter and it is within the court's discretion to employ such a severe remedy, the court does not find that such a sanction is appropriate in this instance. The court generally applies lesser sanctions before choosing such an extreme remedy.  While the court advises that further delay may result in more severe sanctions, under the circumstances the court finds that the appropriate response is to compel the Weinberger defendants to provide a complete response by **July 11, 2011,** and to **ORDER** the Weinberger defendants to pay the attorney fees Medical Assurance expended to file this motion.  *See* Rule

37(a)(5) (stating that the court must order the party who neces-
sitated the filing of a discovery motion to pay the movant's
reasonable expenses).

Next, Medical Assurance moves to compel responses from PCF
to the interrogatories it served on December 29, 2010.  A party
may "obtain discovery regarding any matter, not privileged, that
is relevant to the claim or defense of any party, including the
existence, description, nature, custody, condition and location
of any books, documents, or other tangible things."  Federal Rule
of Civil Procedure 26(b)(1).  For discovery purposes, relevancy
is construed broadly to encompass "any matter that bears on, or
that reasonably could lead to other matter[s] that could bear on,
any issue that is or may be in the case.  *Chavez v. DaimlerChrys-
ler Corp.,* 206 F.R.D. 615, 619 (S.D. Ind. 2002)(*quoting* **Oppen-
heimer Fund, Inc. v. Sanders,** 437 U.S. 340, 351, 98 S.Ct. 2380,
2389, 57 L.Ed.2d 253 (1978)).  Even when information is not
directly related to the claims or defenses identified in the
pleadings, the information still may be relevant to the broader
subject matter at hand and meet the rule's good cause standard.
*Borom v. Town of Merrillville*, 2009 WL 1617085, *1 (N.D. Ind.
June 8, 2009) (*citing* **Sanyo Laser Prods., Inc. v. Arista Records,
Inc.**, 214 F.R.D. 496, 502 (S.D. Ind. 2003)).  *See also* **Adams v.
Target,** 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good

cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); ***Shapo v. Engle,*** 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses.  Rule 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." ***Gregg v. Local 305 IBEW***, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(*citing* ***Kodish v. Oakbrook Terrace Fire Protection Dist.***, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); ***McGrath v. Everest Nat. Ins. Co.***, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); ***Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services***, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009) (internal citations omitted).  The objecting party must show with specificity that the request is improper.  ***Cunningham v. Smithkline Beecham***, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(*citing* ***Graham v. Casey's General Stores***, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discov-

ery of admissible evidence." *Cunningham*, 255 F.R.D. at 478

(*citing* *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6

(N.D. Ill. Aug. 2, 2006))(internal quotations and citations

omitted). Rather, the court, under its broad discretion, consid-

ers "the totality of the circumstances, weighing the value of

material sought against the burden of providing it, and taking

into account society's interest in furthering the truth-seeking

function in the particular case before the court." *Berning v.*

*UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining

*Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir.

2002))(internal quotations and citations omitted).

PCF objects to the interrogatories, arguing that they are

premature contention interrogatories. "The phrase 'contention

interrogatory' is used imprecisely to refer to many different

kinds of questions." *Ziemack v. Centel Corp.*, 1995 WL 729295, *2

(N.D. Ill. Dec. 7, 1995)(*quoting* *In re Convergent Technologies*

*Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985)). Contention

interrogatories can be classified as questions asking a party to:

"indicate what it contends or whether the party makes some

specified contention[;] . . . state all facts or evidence upon

which it bases some specific contention; take a position and

apply law and facts in defense of that position; or explain the

theory behind some specified contention." *Ziemack*, 1995 WL

729295 at *2 (citations omitted).  The basic premise of a conten-
tion interrogatory is to require a party to commit to a position
and to give support for that position.  *Ziemack*, 1995 WL 729295
at *2. In the interest of judicial economy and fairness, the
answers to contention interrogatories often are delayed until the
end of discovery.  Federal Rule of Civil Procedure 33(c) Advisory
Committee Notes (1970 amendments) (Since interrogatories involv-
ing mixed questions of law and fact may create disputes between
the parties which are best resolved after much or all of the
other discovery has been completed, the court is expressly
authorized to defer an answer. Likewise, the court may delay
determination until the pretrial conference, if it believes that
the dispute is best resolved in the presence of the judge.); *In
re H & R Block Mortgage Corp., Prescreening Litigation*, 2006 WL
3692431, *4 (N.D. Ind. Dec. 13, 2006); *Ziemack*, 1995 WL 729295 at
*2.  However, in the event such answers will contribute to issue
clarification, narrow the scope of the dispute, or provide for
early settlement, they may be proper. *Edward Lowe Industries,
Inc. v. Oil-Dri Corp. of America*, 1995 WL 399712, *3 (N.D. Ill.
1995) (*quoting Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96
(E.D. Pa. 1992)). The twin aims of efficiency and fairness con-
trol in determining whether a party should provide answers to
early contention interrogatories.  *Ziemack*, 1995 WL 729295 at *2.

The court may ask if early answers are likely to require multiple supplemental answers or require a party to commit prematurely to positions, thereby artificially narrowing the issues. *Ziemack*, 1995 WL 729295 at *2.

Medical Assurance does not deny, and the court agrees, that the interrogatories at issue are contention interrogatories. *See* Pltf. Memo. in Supp. of Mot. Summ. J. p. 11 ("Nevertheless, the PCF stubbornly refuses to answer basic discovery to explain its theories of the case . . ."). Interrogatories 9, 10, 15, 16, 18, 22, and 23 ask PCF to provide its factual basis for denying certain allegations in Medical Assurance's complaint. Interrogatories 6, 7, 11, 17, and 20 ask PCF if it contends that Weinberger undertook certain actions and to provide supporting evidence for any such contentions. Because these interrogatories ask PCF to state evidence upon which it bases its specific contentions and the theories behind its positions, the court must consider whether efficiency and fairness will be served by compelling responses. *See Ziemack*, 1995 WL 729295 at *2 (defining contention interrogatories as ones asking a party to "state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention."); *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, *5

14

(N.D. Ind. Jan. 23, 2009) (explaining that the court must consider the efficiency and fairness of compelling a party to answer contention interrogatories).

The burden rests with the party propounding the interrogatories to show its specific reasons for demanding early answers to contention interrogatories.  *In re H & R Block*, 2006 WL 3692431 at *4 (*citing* **In re Convergent Technologies Securities Litigation**, 108 F.R.D. at 338-39 ("A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered. Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure"). The requesting party must do more than argue that it is entitled to understand the opposing party's factual theories.  *In re H & R Block*, 2006 WL 3692431 at *4.

Medical Assurance attempts to satisfy this burden by arguing that PCF has asserted the same claims during the four year pendency of this suit and has not identified any discovery that it has left to conduct that will put it in a better position to respond to Medical Assurance's interrogatories.  However, Medical Assurance has not demonstrated how it would suffer prejudice from

delaying response to the contention interrogatories.  Currently,
the court has re-opened discovery and set new deadlines at the
May 5, 2011 status conference, and this matter has not been set
for trial.  Although this case has been pending for over four
years, it was subject to a stay for an extended period of time.
At this point in the litigation, it is too early to require PCF
to lock itself into the theories it intends to advance.  There is
no obvious benefit to Medical Assurance that would result from
compelling PCF to respond, or prejudice from denying its motion.
Medical Assurance's Motion to Compel the PCF's Answers to Inter-
rogatories is accordingly **DENIED.**

The parties' inability to reach agreement on any discovery
issues further continues in Medical Assurance's motion for a
protective order, asking the court to limit the scope of the
depositions PCF intends to conduct.  A party may move for a
protective order in order "to protect a party or person from
annoyance, embarrassment, oppression, or undue burden or expense.
. . ." Rule 26(c)(1).  The party requesting the protective order
carries the burden of demonstrating good cause and can satisfy
that burden by showing an adequate reason for the order. 8
Charles Alan Wright & Arthur R. Miller, *Federal Practice and*
*Procedure* §2035 (3d ed. 1998). *See also* **Gregg**, 2009 WL 1325103 at
*8 ("The burden rests upon the objecting party to show why a

particular discovery request is improper." (*citing* **Kodish**, 235
F.R.D. at 449-50); **McGrath**, 2009 WL 1325405 at *3; **Carlson
Restaurants Worldwide, Inc.,** 2009 WL 692224 at *5). A factual
basis is required to establish that a particular discovery re-
quest is improper and that good cause exists for issuing the
order. *See* **Felling v. Knight**, 211 F.R.D. 552, 554 (S.D. Ind.
2003) ("To establish good cause a party must submit 'a particular
and specific demonstration of fact, as distinguished from stereo-
typed and conclusory statements.'") (*quoting* **Wilson v. Olathe
Bank**, 184 F.R.D. 395, 397 (D. Kan. 1999)) (*quoting* **Gulf Oil Co.
v. Bernard**, 452 U.S. 89, 102  n.16, 101 S.Ct. 2193, 68 L.Ed.2d
693 (1981)). *See also* **Harrisonville Telephone Co. v. Ill. Com-
merce Comm'n**, 472 F.Supp.2d 1071, 1078 (S.D. Ill. 2006) (stating
that in order to establish good cause, the movant must rely on
particular and specific demonstrations of fact, rather than
conclusory statements).

As an initial matter, in its motion Medical Assurance
requests the court to strike subjects 6, 8-9, 12, 18-19, 35-39,
48-56 from the deposition notice. In its supporting brief,
Medical Assurance only discusses subjects 8, 9, 35, 48, 51-56.
Medical Assurance acknowledges in its reply brief that it only is
seeking a protective order to strike the proposed deposition
topic numbers 8, 9, 35, 48, 51, 52, 53, 55, and 56, on the

grounds that these topics are not stated with reasonable particularity and exceed the scope of the issues presented in Medical Assurance's motion for summary judgment.  Although PCF challenges Medical Assurance's compliance with Rule 37 and Local Rule 37.1 for failing to certify the efforts it took to resolve the discovery disputes absent court intervention, the cited challenges are not directed to the deposition topics for which Medical Assurance is now seeking a protective order.  Medical Assurance submitted a certification of its good faith efforts to resolve the parties' dispute over deposition topics 8, 9, 35, 48, 51-56, and has fully complied with Rule 37 and Local Rule 37.1

Turning to the merits of the dispute, Medical Assurance first makes a blanket objection to all of the proposed deposition subjects at issue, arguing that the deposition must be limited to the facts relevant to the issues raised in Medical Assurance's motion for summary judgment.  Despite Medical Assurance's contention that it is well established that discovery must be limited to matters raised in a motion for summary judgment, it fails to cite to any binding precedent.  Rather, Medical Assurance cites to a case where the court denied a motion to continue discovery and extend the time to respond to the pending summary judgment motion because the summary judgment motion was limited to pure questions of law and further discovery would not bear on its

outcome.  *See* ***Williams v. Phillips Petroleum Co.***, 23 F.3d 930,
937 (5th Cir. 1994).  However, PCF is not asking to continue
discovery to respond to the pending motion for summary judgment.
Rather, discovery is ongoing in this matter, and PCF indicates
that it needs further information not only to defend the claims
against it, but to support its counterclaim.  The federal rules
contemplate a broad scope of discovery, permitting discovery of
any information that might reasonably lead to admissible evi-
dence.  Nothing in the rules suggests that discovery becomes more
limited when a motion for summary judgment is filed.

Medical Assurance also attempts to justify its position by
arguing that the Seventh Circuit limited the scope of discovery
when it reversed the stay order.  However, the ***Hellman*** decision
was limited to addressing the stay the court imposed on this
matter and did not address, and thereby limit, discovery in any
manner.  *See* ***Medical Assurance Company, Inc. v. Hellman***, 610 F.3d
371 (7th Cir. 2010).  The analysis for determining the breadth of
discovery varies greatly from that applied to determine whether a
matter should be subject to stay pending resolution of an under-
lying claim.  The federal rules contemplate a broad scope of
discovery, while granting a stay of the proceedings generally is
disfavored and demands the analysis of several factors.  *Compare,*
***Chavez***, 206 F.R.D. at 619 (*quoting* ***Oppenheimer Fund, Inc.*** 437

U.S. at 351, 98 S.Ct. at 2389), *with* **Machinery Movers, Riggers and Machinery Erectors, Local 136 v. Nationwide Life Insurance Company**, 2006 WL 2927607, *2 (N.D. Ill. Oct. 10, 2006), *and* **Baltimore and Ohio Chicago Terminal Railroad Co. v. Wisconsin**, 1997 WL 545491 (N.D. Ill. Sept. 2, 1997).

In the **Hellman** decision, the Seventh Circuit explained that permitting the present matter to move forward would not necessarily intrude upon or delve into the specific facts or questions of the underlying claims. Specifically, the court noted that "[w]e are not willing to assume that the only way Medical Assurance can prove its case is through an excursion into factual questions that the state courts have been, or will be, asked to address." **Hellman**, 610 F.3d at 381. The court did not state that the underlying claims were in no way relevant to the present matter, that discovery into these matters would not lead to admissible evidence, or that Medical Assurance could not support its position that it suffered actual prejudice with information relating to the underlying malpractice claims.

Moreover, even if discovery was limited to the issues raised in Medical Assurance's motion for summary judgment — the effect Weinberger's behavior had on his contractual relations — Medical Assurance made the underlying malpractice claims relevant to its motion for summary judgment. As one aspect of Medical Assur-

ance's claim, it argues that it suffered actual prejudice from defending the underlying malpractice actions without Weinberger's assistance. *See* Pltf. Memo. in Supp. of Mot. Summ. J. pp. 4-7. Medical Assurance refers to and supports its position with various evidence of the events that occurred in the underlying malpractice actions, thereby making the underlying malpractice claims relevant to its motion.  Medical Assurance cannot pick and choose what information from the underlying claims is relevant and subject to discovery.  Information concerning the underlying claims may help PCF develop a defense against Medical Assurance's claim of prejudice or may lead to admissible evidence to support its counterclaim.  For example, if PCF can show that the result of the underlying claims would have been the same independent of Weinberger's conduct, it may be able to negate Medical Assurance's claim of actual prejudice.  Therefore, although the outcome of the underlying medical malpractice claims may not bear on the ultimate disposition of this case, it may lead to admissible evidence tending to prove or disprove the prejudice Medical Assurance alleges to have suffered as a result of Weinberger's failure to comply with policy terms and is not entirely outside the realm of discoverable information.

Additionally, Medical Assurance raised specific objections to each proposed topic.  Topics eight and nine state PCF's intent

to question how the acts or omissions of the Weinberger defen-
dants prejudiced Medical Assurance with regard to each of the
medical malpractice plaintiffs.  The court already has rejected
Medical Assurance's objection that discovery is limited to the
issues raised in its motion for summary judgment.  Medical
Assurance next argues that these topics improperly seek the
mental impressions and legal reasoning of counsel because they
impermissibly request the factual knowledge underlying the
conclusion that the Weinberger defendants caused actual prejudice
to Medical Assurance.  The court notes that Medical Assurance
moved to compel discovery responses that question the factual
basis of PCF's position, yet vigorously opposes sharing its own.
However, the court finds that Medical Assurance's objections are
premature.  PCF is not proposing to ask counsel for its opinions
and conclusions on what acts prejudiced Medical Assurance.
Rather, Medical Assurance explained its position in its motion
for summary judgment, and PCF now intends to explore the factual
basis that may have formed Medical Assurance's position.  It
would be an abuse of discretion for the court to limit discovery
on a matter essential to resolution of the matter.  PCF may
proceed to explore Weinberger's conduct and the effect it had on
Medical Assurance with respect to the underlying malpractice
claims.

Next, subject 35 states that PCF intends to inquire about Medical Assurance's evaluation of the medical malpractice plaintiffs' claims.  Medical Assurance objects, arguing that the proposed topic will infringe upon information protected by the attorney-client and work product privileges because it seeks to discover Medical Assurance's legal reasoning, interpretation, and evaluation of the legal claims made by the medical malpractice plaintiffs.

The attorney-client privilege protects communications between a client and his lawyer.  "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981).  The Seventh Circuit applies the privilege under the following principles:

> (1) Where legal advice of any kind is sought
> (2) from a professional legal adviser in his
> capacity as such, (3) the communications
> relating to that purpose, (4) made in confi-
> dence (5) by the client, (6) are at his in-
> stance permanently protected (7) from disclo-
> sure by himself or by the legal adviser, (8)
> except the protection be waived.
>
> *United States v. White*, 950 F.2d 426, 430
> (7th Cir. 1991)

The party seeking to establish the privilege must demonstrate all of the requirements for invoking the attorney-client privilege. *White*, 950 F.2d at 430. "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *White*, 950 F.2d at 430 (*citing **United States v. Lawless***, 709 F.2d 485, 487 (7th Cir. 1983))(internal quotation omitted).

Medical Assurance must make any objections based on the attorney-client privilege on a question-by-question basis. Its broad objection to the proposed subject under the attorney-client privilege falls short of satisfying the procedural requirements for asserting the privilege. Medical Assurance has not shown that the proposed questions necessarily will concern conversations exchanged between Medical Assurance and its counsel. Therefore, the court will not issue a protective order striking subject 35 from PCF's deposition notice based on the attorney-client privilege.

"The work product privilege is distinct from and broader than, the attorney-client privilege." ***Broadnax v. ABF Freight Systems, Inc.***, 1998 WL 474099, *1 (N.D. Ill. 1998). The work product doctrine is codified in Rule 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

> (including the other party's attorney, con-
> sultant, surety, indemnitor, insurer, or
> agent).  But, subject to Rule 26(b)(4), those
> materials may be discovered if:  (i) they are
> otherwise discoverable under Rule 26(b)(1);
> and (ii) the party shows that it has substan-
> tial need for the materials to prepare its
> case and cannot, without undue hardship,
> obtain their substantial equivalent by other
> means.  .  .  .  If the court orders discov-
> ery of those materials, it must protect
> against disclosure of the mental impressions,
> conclusions, opinions, or legal theories of a
> party's attorney or other representative
> concerning the litigation.

*See also* **Boyer v. Gildea**, 257 F.R.D. 488, 490 (N.D. Ind. 2009)

(applying the rule).  To meet the qualified immunity from discov-

ery based on Rule 26(b)(3), the materials sought must be: "(1)

documents and tangible things; (2) prepared in anticipation of

litigation or for trial; and (3) by or for a party or by or for a

party's representative." **Boyer**, 257 F.R.D. at 490 (*citing*

Wright, Miller & Marcus, 8 *Federal Practice & Procedure* §2024 (3d

ed.)).  "Information that is merely factual may not be withheld

under the umbrella of work product but must be available, if not

through the production of otherwise protectible documents, then

through interrogatories or depositions." **Broadnax**, 1998 WL

474099 at *1 (*citing* 8 Wright & Miller, *Federal Practice and

Procedure*, §2023 at 194).

Proposed deposition topic 35 could not be addressed without

questioning the mental processes of Medical Assurance and its

counsel.  *See* **Hickman v. Taylor**, 329 U.S. 495, 509, 514, 67 S.Ct.
385, 393, 395, 91 L.Ed. 451 (1947).  Topic 35 states PCF's intent
to question Medical Assurance's evaluation, and consequently
their reasoning, interpretation, and conclusions, of the underly-
ing medical malpractice claims.  Any evaluation Medical Assurance
conducted of the underlying malpractice claims would have been in
anticipation of litigation of those claims.  PCF is proposing to
inquire about legal conclusions and mental impressions, rather
than facts, taking the proposed deposition topic 35 outside the
scope of discoverable information.  *See e.g.*, **S.E.C. v. Buntrock,**
217 F.R.D. 441, 445-46 (N.D. Ill. 2003) (explaining that the
nature of the deposition was aimed at finding the nature of the
plaintiff's work product, and was denied for that reason)*;*
**JPMorgan Chase Bank v. Liberty Mut. Ins. Co.**, 209 F.R.D. 361, 362
(S.D.N.Y. 2002) ("[D]epositions, including 30(b)(6) depositions,
are designed to discover facts, not contentions or legal theo-
ries, which, to the extent discoverable at all prior to trial,
must be discovered by other means.").  Accordingly, Medical
Assurance is **GRANTED** a protective order with respect to topic 35.

Topic 48 states that PCF intends to conduct discovery on the
amount of money Medical Assurance has reserved for each of the
claims made by the medical malpractice claimants.  Beyond citing
to **Hellman** for the proposition that the underlying malpractice

actions are unrelated to the present matter, Medical Assurance
has not raised more than boilerplate objections and fails to
satisfy its duty to show why the requested information is not
subject to discovery.  The amount Medical Assurance has set aside
may be relevant to show the extent of prejudice Medical Assurance
has suffered as well as the amount of damages.  Absent a more
specific explanation of why the identified topic is not subject
to discovery, Medical Assurance's motion is **DENIED** with respect
to topic 48.

Topics 51, 52, and 54 more broadly request information con-
cerning the amount Medical Assurance has spent defending medical
malpractice claims in the past and projects it will spend in the
future.  These proposed topics extend beyond the underlying
medical malpractice claims and seek information relevant to
claims Medical Assurance defended over an extensive period of
time across the nation.  PCF propounds that the information is
necessary to determine the average cost Medical Assurance spends,
so it may determine whether Medical Assurance encountered addi-
tional costs in defending the Weinberger cases.  However, the
breadth of Medical Assurance's proposed deposition subject is
overly burdensome.  The cost of defending suits across the nation
may differ over time and depend on the market rate for attorneys
in a given area as well as the extent of injuries and the sever-

ity of the actions of the defending physician.  As it stands,
topics 51, 52, and 54 are irrelevant and overly burdensome.
Medical Assurance's motion for protective order is **GRANTED** with
respect to these subjects.

Topics 53, 55, and 56 state PCF's intent to inquire about
Medical Assurance's policies for containing costs.  Topic 53
states that PCF intends to inquire about Medical Assurance's
policies for reducing the cost spent on medical malpractice
claims.  Topic 55 states that PCF will ask about "[a]ny retention
and billing policies for outside counsel, reflecting or relating
to Medical Assurance's policies and procedures for outside coun-
sel that it retained for its injured from January 1, 2004 to
present."  Similarly, topic 56 states that PCF intends to ask
about any litigation budget provided by Spangler and Jennings,
the law firm Medical Assurance retained to defend the malpractice
claims.  Medical Assurance objects that these topics are overly
broad and unduly burdensome.  PCF responds that the proposed
topics are necessary to show the extent of impact Weinberger's
conduct had on Medical Assurance's ability to defend the malprac-
tice cases.  Medical Assurance's policies to reduce costs do not
shed any light on the actual prejudice it was caused, nor does
PCF show how the information sought by this topic would relate to
its defense or counterclaim.  The same can be said for PCF's

intent to delve into Medical Assurance's history of defending malpractice cases. Absent some explanation, the proposed topics exceed the scope of not only this matter, but also the underlying malpractice claims. Medical Assurance's policies from 2004 forward cannot possibly prove or disprove whether Medical Assurance was prejudiced in this matter. Medical Assurance's motion is, therefore, **GRANTED** with respect to topics 53, 55, and 56.

_____

Based on the foregoing reasons, the Motion for Discovery Sanctions of the Plaintiff, the Medical Assurance Company, Inc., as to the Weinberger Defendants [DE 246] filed on April 4, 2011, is **DENIED**, the Motion for Protective Order [DE 248] filed by Medical Assurance on April 7, 2011, is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Compel the PCF's Answers to Interrogatories [DE 261] filed by Medical Assurance on April 13, 2011, is **DENIED.** The Weinberger defendants shall provide a complete response to Medical Assurance's interrogatories by July 11, 2011, and Medical Assurance shall file an affidavit regarding attorney fees by July 11, 2011.

ENTERED this 20th day of June, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge