UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

THE MEDICAL ASSURANCE COMPANY,        )
INC.,                                  )
                                       )
              Plaintiff                )
                                       )
         v.                            )   Case No. 4:06 cv 117
                                       )
MARK S. WEINBERGER, M.D.,              )
et al.,                                )
                                       )
              Defendants               )

OPINION AND ORDER

This matter is before the court on the Motion of the Plain-
tiff, The Medical Assurance Company, to Stay Proceedings Until
the Court has Ruled on its Renewed Motion for Discovery Sanctions
as to the Weinberger Defendants [DE 363] filed on December 7,
2011; the Motion of the Plaintiff, The Medical Assurance Company,
for Expedited Briefing Schedule and Ruling on Its Renewed Motion
for Discovery Sanctions as to the Weinberger Defendants [DE 365]
filed on December 7, 2011; Stephen W. Robertson, Commissioner of
the Indiana Department of Insurance and Administrator of the
Indiana Patient's Compensation Fund's Motion to Stay or in the
Alternative, Motion to File Documents In Camera [DE 371] filed on
January 6, 2012; the Motion to Appoint Special Master to Oversee
Settlement Negotiations [DE 372] filed by the defendant, Stephen
W. Robertson, on January 6, 2012; and Stephen W. Robertson,
Commissioner of the Indiana Department of Insurance and Adminis-

trator of the Indiana Patient's Compensation Fund's Motion for Leave to File Surreply and Statement of Supplemental Authority [DE 386] filed on December 7, 2011.

Because the court has ruled on Medical Assurance's motion for sanctions, the Motion of the Plaintiff to Stay Proceedings Until the Court has Ruled on its Renewed Motion for Discovery Sanctions as to the Weinberger Defendants [DE 363] is **DENIED AS MOOT;** the Motion of the Plaintiff for Expedited Briefing Schedule and Ruling on Its Renewed Motion for Discovery Sanctions as to the Weinberger Defendants [DE 365] is **DENIED AS MOOT;** and Stephen W. Robertson's Motion for Leave to File Surreply and Statement of Supplemental Authority [DE 386] is **DENIED AS MOOT.**

For the reasons set forth below, Stephen W. Robertson's Motion to Stay or in the Alternative, Motion to File Documents In Camera [DE 371] is **DENIED,** and the Motion to Appoint Special Master to Oversee Settlement Negotiations [DE 372] is **GRANTED.**

## Background

This matter arises from a contract dispute concerning liability for approximately 350 pending medical malpractice claims against Dr. Mark S. Weinberger and the business entities he owned (the Weinberger defendants).  At the time the case was filed, Weinberger could not be located and recently was arrested on federal criminal charges.

2

Medical Assurance seeks a declaratory judgment that it does not owe a duty to indemnify or defend the Weinberger defendants in the underlying malpractice cases because Weinberger did not participate in his defense, as required by the insurance policy. To succeed, Medical Assurance is required to demonstrate that it was prejudiced by Weinberger's disappearance and lack of cooperation.

On May 2, 2007, the defendants moved to stay the case pending resolution of the underlying malpractice cases. The district court granted the defendants' motion to stay the litigation, finding that the prejudice inquiry depended on the facts and defenses in the state court cases. The district court concluded that it would be impossible for Medical Assurance to show actual prejudice without interfering with the state court proceedings. On appeal, the Seventh Circuit lifted the stay, explaining that it could "imagine ways in which Medical Assurance might try to establish actual prejudice that would unacceptably intrude on the state cases, but other ways might not run the risk." *Medical Assurance v. Hellman*, 610 F.3d 371, 381 (7th Cir. 2010). The Seventh Circuit determined that Medical Assurance needed the opportunity to develop its position before the court could determine to what extent the state court decisions might affect the declaratory judgment action.

On January 13, 2011, Medical Assurance filed a motion for summary judgment.  In its brief, Medical Assurance argued that it was prejudiced by Weinberger's refusal to cooperate because:

>    (1) Weinberger refused to give deposition testimony, making it more difficult for Medical Assurance to defend any claims and entitling the malpractice plaintiffs to an instruction that the jury may draw an adverse inference from Weinberger's refusal to testify.
>
>    (2) Weinberger refused to respond to Requests for Admission and any refusal constitutes an admission of the substance, which may be used against him.
>
>    (3) Weinberger pled guilty to a multi-count federal felony scheme and the confession and guilty plea can be used to impeach him.
>
>    (4) Because Weinberger fled the United States, evaded law enforcement, and hid for more than five years, the State of Indiana Medical Licensing Board revoked his license and entered findings that he had used his medical practice to defraud numerous insurance companies by submitting bills for services which he never performed or by grossly over-billing for the treatment which he rendered.  This may be used against Weinberger in the underlying cases.
>
>    (5) Weinberger has irreparably harmed his defense by failing to participate in discovery matters, resulting in the issuance of two court orders sanctioning the Weinberger Defendants:
>
>>        i) On May 22, 2006, the Lake Superior Court sanctioned the Weinberger Defendants in 285 of the underlying Claims brought by the Verhoeve Claimants because of Wein-

4

berger's refusal to respond to
written discovery and appear for
his deposition:

> The Court finds that prejudice
> to the [Claimants] by Wein-
> berger's discovery failures
> will exist if Weinberger is
> able to testify in the pending
> panel actions, or in any sub-
> sequently filed civil cases
> for damages once the proposed
> complaints have progressed
> through the panel process. . . .
> That prejudice can be cured by
> prohibiting Weinberger or any
> of the Weinberger entities
> from using Weinberger's sworn
> testimony to defend the cases
> pending before the panels or
> in any subsequently filed
> civil actions. . . . In the
> 285 cases identified in Ex-
> hibit A to the [Claimants'
> Motion for Default Judgment],
> and the supplement thereto
> filed January 12, 2006, the
> Weinberger Defendants are not
> permitted to offer any sworn
> testimony of Weinberger in
> defense of those cases as they
> proceed through the medical
> review panel process.

ii) On April 25, 2007, the Lake
Superior Court also sanctioned the
Weinberger Defendants in the under-
lying Claims brought by the Thomas
Claimants because of Weinberger's
refusal to respond to written dis-
covery and appear for his deposi-
tion:

> As a result of Dr. Wein-
> berger's failure to partici-
> pate in discovery, . . . Dr.

Weinberger is prohibited from offering testimony in the plaintiffs' cases pending before the Indiana Department of Insurance and, to the extent the Court has the jurisdiction to do so, the plaintiffs' medical malpractice actions against Dr. Weinberger that are filed after those cases have been reviewed by, and received opinions issued by, a medical review panel.

The Weinberger Defendants now are barred from offering Weinberger's testimony in every trial. (Statement ¶¶19-24) Not only will they not be able to have the key witness describe and explain his actions and thought processes, they will not be able to rebut any such evidence offered by the Claimants. Medical Assurance won't be able to refute either what the Claimants say occurred or what they say Weinberger said to them. Also, as with Weinberger's refusal to testify, the Claimants now will argue in every case that they are entitled to instruct the jury that the jury can draw an adverse inference from Weinberger's failure to testify.

(6) As a result of Weinberger's intentional disappearance and refusal to participate in the defense of the claims, Medical Assurance has been unable to evaluate and prepare a defense of the claims in any meaningful manner. His explanation of his diagnoses, the need for surgery, and the standard of care exercised in connection with performing the various surgeries is imperative to the inves-

tigation, understanding, or evaluation of any
possible defenses to the claims, as well as
any evaluation of damages and exposure. With-
out Weinberger's testimony regarding his
thought processes, evaluations, and diagno-
ses, no meaningful defense of the claims is
possible.

(7) Weinberger's refusal to cooperate has
made arms-length settlement negotiations
impossible.

(8) Weinberger's refusal to cooperate in the
defense of the Weinberger Defendants also
has made preparation of a defense of the
claims more costly to Medical Assurance.
Medical Assurance will have to hire an inde-
pendent consulting expert in virtually every
case to try to determine what Weinberger
actually did. This would not be necessary
under normal circumstances where the insured
cooperates in his or her defense.  An expert
witness also will be necessary to explain
Weinberger's treatment in order to present
some meaningful defense to issues involving
Weinberger's actions or his judgment.

(9) Finally, Medical Assurance has "irre-
trievably lost" the opportunity to ascertain
from Weinberger the facts relating to his
treatment of the claimants, including the
identification of those claims which are
either outside of the scope of its insurance
coverage or are exempted from coverage by
policy exclusions — such as for criminal
behavior, fraudulent billing practices or
fraudulent consents to unnecessary surgeries.

(Pltf. M.Summ.J. pp. 5-7)

PCF now asks the court to stay proceedings on the issue of

prejudice, arguing that it is apparent from the arguments Medical

Assurance raised in its motion for summary judgment that Medical

Assurance intends to show actual prejudice by interfering with the state court proceedings and that the state court proceedings will be intertwined with its defense of Medical Assurance's motion for summary judgment. PCF explains that some of the evidence it intends to file in response to Medical Assurance's motion for summary judgment may be detrimental to Weinberger's malpractice claims which it may have to defend if this court determines that Medical Assurance does not owe a duty to defend or indemnify. Specifically, PCF could defend itself here by arguing that Weinberger's claims are indefensible. However, if PCF later has to defend Weinberger's malpractice claims, these arguments may be used against it and to its detriment.

PCF also complains that continued discovery may harm Weinberger's defense in the underlying malpractice cases. Medical Assurance conducted an interview of Weinberger and that video already has been used against him in the underlying malpractice suits. PCF fears that additional discovery similarly may be used to Weinberger's detriment. After PCF filed its motion to stay the proceedings, the district court dismissed the pending motions for summary judgment without prejudice.

PCF also requests the court to appoint a special master to oversee settlement negotiations and suggests the appointment of John Van Winkle because he assisted in settlement negotiations

8

for some of the pending claims.  PCF explains that it will take years to resolve all of the underlying malpractice cases by trial.  The Verhoeve defendants agree that a special master should be appointed, but oppose Van Winkle, and the Thomas defendants object to the appointment of a special master, but agree to Van Winkle if the court chooses to appoint a special master over their objection.

Discussion

PCF asks the court to stay the proceedings pending resolution of the malpractice cases filed in state court. On appeal, the Seventh Circuit explained that the very terms of the Declaratory Judgment Act give the district court the discretion to decline to hear cases.  ***Hellman***, 610 F.3d at 378.  The Declaratory Judgment Act states that the court "may declare the rights and legal relations of any interested party seeking such declaration".  28 U.S.C. §2201(a).  When determining whether to stay an action for declaratory judgment, the proper inquiry for the court to ask is "'how real [is the prospect]' that 'the declaratory action may present factual questions that the state court has also been asked to decide.'" ***Hellman***, 610 F.3d at 379 (*citing Nationwide Insurance v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995)).  The court must review the overlap of the proceedings, including

> whether the declaratory suit presents a ques-
> tion distinct from the issues raised in the
> state court proceeding, whether the parties
> to the two actions are identical, whether
> going forward with the declaratory action
> will serve a useful purpose in clarifying the
> legal obligations and relationships among the
> parties or will merely amount to duplicative
> and piecemeal litigation, and whether compa-
> rable relief is available to the plaintiff
> seeking a declaratory judgment in another
> forum or at another time.

*Nationwide Insurance*, 52 F.3d at 692

The stay should be granted only when the issues are substantially the same, and "[s]uch a declaratory judgment would control the underlying suit, thus prejudicing a party to the action." *Minne-sota Lawyers Mutual Insurance Co. v. Larson*, 2007 WL 2688443, *3 (S.D. Ill. Sept. 11, 2007).

To succeed on its claim, Medical Assurance would have to show that the breach (1) was intentional, (2) that the insurer has made a diligent effort to obtain cooperation, and (3) that the failure to cooperate prejudiced the defense. *Smithers v. Mettert*, 513 N.E.2d 660, 662 (Ind. App. 1987); *Wood v. Allstate Insurance Company*, 21 F.3d 741, 745 (7th Cir. 1994) (*quoting Miller v. Dilts*, 463 N.E.2d 257, 261 (Ind. 1984))("[A]n insurance company must show actual prejudice from an insured's noncompli-ance with the policy's cooperation clause before it can avoid liability under the policy."). Prejudice is established by demonstrating that the underlying cases would have resulted in a

10

different outcome if the insured cooperated.  *Cincinnati Insurance Company v. Irvin*, 19 F.Supp.2d 906, 915 (S.D. Ind. 1998).

The Seventh Circuit acknowledged that although the scope of Weinberger's insurance coverage is not at issue in the underlying malpractice cases, to show actual prejudice Medical Assurance may intrude on the state cases.  *Hellman*, 610 F.3d at 381.  The Seventh Circuit concluded that at the time the district court granted the stay it was too early to determine whether Medical Assurance would prove its case "through an excursion into the factual questions that the state courts have been, or will be, asked to address."  *Hellman*, 610 F.3d at 381.  PCF argues that Medical Assurance chose to make this excursion, and that a stay is now appropriate to prevent discovery that may be detrimental to Weinberger's underlying malpractice defense and for PCF to avoid "shipwrecking" its defense of the underlying malpractice claims should it be determined that Medical Assurance does not owe a duty to defend and indemnify the Weinberger defendants in the pending malpractice cases.

In *Old Republic Insurance Co. v. Chukak & Tecson, P.C.,* 84 F.3d 998 (7th Cir. 1996), a law firm's malpractice insurer brought an action for declaratory judgment, asking the court to conclude that it did not have a duty to defend two pending legal malpractice actions in cases an attorney accepted before joining

11

the firm.  The insurer wanted to conduct discovery on the details
of the attorney's relationship to his law firm to establish that
the attorney was not acting in the scope of his employment at the
time of the alleged malpractice.  *Old Republic*, 84 F.3d at 1000.
In the underlying malpractice suits, the plaintiff also needed to
prove that the attorney was acting within the scope of his
employment when the acts giving rise to the claim were committed.
*Old Republic*, 84 F.3d at 1003.  The Seventh Circuit explained
that if the pretrial discovery the insurer wanted to conduct
showed that the attorney had been acting within the scope of his
employment with the firm, this could shipwreck the defense of the
underlying malpractice claim and would put the attorney in the
position of having to defend himself in two suits at his own
expense.  *Old Republic*, 84 F.3d at 1003.  The Seventh Circuit
approved the stay, concluding that discovery should not go behind
the complaint to avoid shipwrecking the defense of the underlying
suit.  *Old Republic*, 84 F.3d at 1002.

    PCF complains that further discovery may likewise undermine
its possible defenses in the underlying malpractice claims and
that the position it intends to take in this matter runs contrary
to the position it intends to take in the underlying malpractice
case.  To avoid choosing between defending this declaratory
judgment action or the malpractice claims, PCF argues that this

matter should be stayed on the issue of prejudice, including further discovery.

The Seventh Circuit has instructed that the first inquiry the district court should make when determining whether to issue a stay of a declaratory judgment pending resolution of the underlying malpractice cases is the degree of overlap between the questions presented to the state court in the underlying cases and the questions presented in the declaratory judgment action. Although the court in *Old Republic* did not delve into a lengthy discussion of the requisite inquiry, it acknowledged that the plaintiff in the underlying malpractice cases would have to prove that the attorney was acting within the scope of his employment, which was the same question presented to the court in the declaratory judgment action. The Seventh Circuit stated that "[t]his analysis confirms the good sense of the general rule that the insurer's declaratory judgment suit is not a proper vehicle for resolving factual issues in the underlying suit against the insured." *Old Republic,* 84 F.3d at 1003.

At this point, the court first must assess the degree of overlap between the underlying malpractice cases and the present matter. In the underlying malpractice cases, the plaintiffs must show that "the defendant owed a duty to the plaintiff, that he breached his duty by conduct falling below the standard of care,

13

and that the breach proximately caused a compensable injury."
**Hellman**, 610 F.3d at 380 (*citing* **Musser v. Gentiva Health Servs.**,
356 F.3d 751, 760 (7th Cir. 2004)).  To succeed in the present
matter, Medical Assurance will have to show that Weinberger did
not cooperate with the defense of the malpractice claims and that
Medical Assurance suffered actual prejudice, meaning that the
results of the underlying cases would have been different had
Weinberger cooperated.  **Cincinnati Insurance**, 19 F.Supp.2d at
916.  The issue of prejudice is not raised in the underlying
malpractice cases, but, PCF argues that Medical Assurance will
delve into issues presented in the malpractice cases to establish
prejudice.  In its brief in support of its motion for summary
judgment, Medical Assurance has advanced several theories to show
how it was prejudiced by Weinberger's refusal to cooperate.

Medical Assurance first has pointed to well established
rules of evidence and procedure that may or already have operated
against it when defending the underlying malpractice cases.
Specifically, Medical Assurance complains that the jury can draw
negative inferences from Weinberger's refusal to testify and
provide information.  This is a well established principal, and
Medical Assurance's reliance on this as evidence of prejudice
does not force this court to determine any issues before the
state court.  *See* **National Acceptance Co. Of America v. Bath-**

14

*alter*, 705 F.2d 924, 929 (7th Cir. 1983) ("[T]here is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination."); *Gash v. Kohm*, 476 N.E.2d 910, 913 (Ind. App. 1985) (*citing* *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *In re Meredosia Harbor & Fleeting Service*, 545 F.2d 583, 591 (7th Cir. 1976)).

Medical Assurance also seeks to establish prejudice by referring to the sanctions the state court already has imposed because of Weinberger's unwillingness to cooperate in discovery. The state court prohibited Weinberger from submitting his sworn testimony in defense of the malpractice cases. Again, this court is not being asked to evaluate the appropriateness of the sanctions, and there is no overlap between the issues the courts are called on to decide. Rather, Medical Assurance is pointing to decisions the state court previously made to show how it was negatively affected by Weinberger's actions.

Additionally, Medical Assurance complains that Weinberger's refusal to cooperate has increased its expenses. Weinberger's conduct has made arms-length negotiations difficult and increased litigation expenses because Medical Assurance was forced to hire

an expert to explain Weinberger's treatment.  Medical Assurance's expenses are relevant to the underlying actions.

Medical Assurance's recitation of the events that it alleges have caused prejudice in mounting a defense are not so substantially intertwined with the questions before the state court to warrant a stay.  The state court is not asked to determine whether Medical Assurance suffered prejudice, and to establish prejudice, Medical Assurance has not presented any questions that, if decided by this court, would interfere with decisions the state courts must make.  PCF has not pointed to one conflict between what the state court must decide and what this court is being asked to consider.

The fact that PCF may desire to take two different approaches to the pending law suits — arguing here that the underlying malpractice claims are indefensible and then facing the possibility of having to defend the cases — is a different quandary than faced in *Old Republic*.  Here, the federal and state courts are not being called on to answer the same question.  PCF has not pointed to any cases to show that a matter should be stayed so that one party may proceed on the theories most favorable to it.  Rather, the proper inquiry is whether a decision in the declaratory judgment action will impede on the state court

proceedings, and here there is no evidence of an overlap between the decisions the courts must make.

It is true that discovery may overlap between the underlying cases and the declaratory judgment action.  However, the issues presented to the state court differ from those presented here, and there is no clear threat that allowing discovery to continue will reveal information that will decide an identical issue pending in state court.  PCF has not demonstrated that ongoing discovery may turn up information that is not subject to discovery in the underlying malpractice cases.  Federal Rule of Civil Procedure 26 permits discovery of all relevant, non-privileged matters.  The fact that the evidence may be revealed that is detrimental to the defendants' position in the underlying cases is irrelevant if the information is currently subject to discovery in both forums, regardless of whether the stay is issued.

When determining whether to stay a declaratory judgment action, the court is required to review other factors in addition to whether the question presented is distinct from the state court proceeding, including whether the parties are identical, whether the declaratory judgment will clarify legal obligations and relationships among parties, and whether comparable relief is available to the plaintiff seeking the declaratory judgment. *Nationwide Insurance*, 52 F.3d at 692.  Although the parties are

17

identical in this action and the underlying malpractice claims, the second and third inquiries are answered in favor of denying the stay.  The declaratory judgment action will clarify the relationship among the parties, resolving who is responsible for defending the underlying malpractice claims and who is liable for any judgments obtained by the malpractice plaintiffs.  If this court declines to hear the declaratory judgment action pending resolution of the underlying malpractice cases, Medical Assurance will incur a significant expense defending the underlying suits that it may not be contractually obligated to provide.  Medical Assurance seeks to avoid this expense and does not have another avenue for pursuing such relief.

The Seventh Circuit has made it clear that the standard by which to judge whether a stay of a declaratory judgment action is appropriate is to ask whether this court will decide issues that will be presented in the underlying action.  The issue of preju-dice is distinct from the issues presented in the state court, and PCF has not demonstrated that Medical Assurance is attempting to show prejudice by forcing this court to decide issues that the state courts must decide.  Rather, Medical Assurance has pointed to decisions and events that have occurred in the underlying litigation and has shown the increased burden it has suffered from Weinberger's failure to cooperate in his defense.  The fact

that PCF may be in the predicament of having to choose between defending this matter by arguing that the malpractice cases are indefensible, and then facing the threat of having to defend the cases, does not demand staying the litigation.  This question of prejudice is solely for the federal court to resolve, and absent any overlap between what the state court and this court must decide, staying this action is inappropriate.

Given the number of underlying medical malpractice cases that are pending, PCF requests the court to appoint a special master to oversee settlement negotiations.  "[A] court may appoint a master only to:

> (A) perform duties consented to by the par-
> ties;
>
> (B) hold trial proceedings and make or recom-
> mend findings of fact on issues to be decided
> without a jury if appointment is warranted
> by:
>
> > (i) some exceptional condition; or
> >
> > (ii) the need to perform an accounting
> > or resolve a difficult computation of
> > damages; or
>
> (C) address pretrial and posttrial matters
> that cannot be effectively and timely ad-
> dressed by an available district judge or
> magistrate judge of the district.
>
> Federal Rule of Civil Procedure 53(a)

The rule begins with a presumption against the appointment of special masters. *See* Federal Rule 53, cmt. 2003 ("A pretrial

19

master should be appointed only when the need is clear.");
*Williams v. Lane*, 851 F.2d 867, 884 (7th Cir. 1988) ("We fully
acknowledge that the appointment of a special master is the
exception and not the rule and that there must be a showing that
some exceptional condition requires such an appointment.")
(internal quotations omitted). The Supreme Court has made clear
that routine considerations such as the general complexity of the
litigation, the projected length of trial, and the congestion of
the court's calendar, do not constitute exceptional circum-
stances. *La Buy v. Howes Leather Company*, 352 U.S. 249, 259, 77
S.Ct. 309, 315, 1 L.Ed.2d 290 (1957).

   Referring limited matters to masters is more frequent with
environmental law and mass tort litigation. *Active Products
Corp. v. A.H. Choitz & Co., Inc.*, 163 F.R.D. 274, 283 (N.D. Ind.
1995) "Recently, many courts have expressly appointed special
masters to achieve settlements in complex litigation." *Active
Products*, 163 F.R.D. at 282-283.  When determining whether to
appoint a special master, the court should consider the number of
parties and the amount of time it would take to resolve all
claims.  *Active Products*, 163 F.R.D. at 283.  When both are
sizeable, the parties may be best served by appointing a special
master to oversee settlements.  *See Active Products*, 163 F.R.D.

at 284 (appointing master to oversee settlement in case with 23 plaintiffs and 1,181 defendants).

PCF argues that this matter should be referred to a master to oversee settlement negotiations because of the high volume of underlying malpractice defendants.  PCF states that it would take five to 13 years to resolve all of the underlying cases at trial. The Verhoeve defendants agree that a special master should be appointed, but oppose PCF's suggestion of John Van Winkle without reason.  The Thomas defendants oppose the appointment of a special master, arguing that "having a court sanctioned protocol without genuinely knowing what that protocol may be runs a strong risk of prejudicing parties who have already waited years to adjudicate their claims", but acquiesce to Van Winkle if the court decides to appoint a special master.  (Thomas Defts Br. p. 2)

It is not clear how the Thomas defendants would be preju-diced by appointing a special master to facilitate settlement. The parties, of course, would not be forced to settle, and settlement of some of the claims likely will result in an earlier resolution of the others.  There are over 350 underlying claims that would take years to resolve without settlement.  Given the high volume of malpractice defendants and the sluggish progress

of this matter, the court finds that it is in the best interest of the parties to facilitate settlement.

The defendants have not given any explanation why Van Winkle would be an inappropriate choice to appoint as master.  Van Winkle previously conducted settlement conferences and has familiarity with this matter.  For these reasons, the Motion to Appoint Special Master to Oversee Settlement Negotiations [DE 372] is **GRANTED.**  The parties are **DIRECTED** to propose how any costs will be paid when a form order finalizing the process is presented to the court for approval.

--------------------

Based on the foregoing, the Motion of the Plaintiff, The Medical Assurance Company, to Stay Proceedings Until the Court has Ruled on its Renewed Motion for Discovery Sanctions as to the Weinberger Defendants [DE 363] filed on December 7, 2011, is **DENIED AS MOOT;** the Motion of the Plaintiff, The Medical Assurance Company, for Expedited Briefing Schedule and Ruling on Its Renewed Motion for Discovery Sanctions as to the Weinberger Defendants [DE 365] filed on December 7, 2011, is **DENIED AS MOOT;** Stephen W. Robertson, Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient's Compensation Fund's Motion to Stay or in the Alternative, Motion to File Documents In Camera [DE 371] filed on January 6, 2012, is **DENIED;**

the Motion to Appoint Special Master to Oversee Settlement Negotiations [DE 372] filed by the defendant, Stephen Robertson, on January 6, 2012, is **GRANTED;** and Stephen W. Robertson, Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient's Compensation Fund's Motion for Leave to File Surreply and Statement of Supplemental Authority [DE 386] filed on December 7, 2011, is **DENIED AS MOOT.**

ENTERED this 26th day of April, 2012


s/ ANDREW P. RODOVICH
United States Magistrate Judge